933 P.2d 606

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Warren David MILLER, Defendant–Appellant.**

**No. 16677.**

Supreme Court of Hawai'i.

Feb. 20, 1997.

Reconsideration Denied April 3, 1997.

Jeffrey M. Albert, Deputy Prosecuting Attorney, on the briefs, Honolulu, for petitioner-appellee.

Theodore Y. H. Chinn, Deputy Public Defender, on the briefs, Honolulu, for petitioner-appellant.

Before MOON, C.J., KLEIN, NAKAYAMA and RAMIL, JJ., and Circuit Judge KOCHI, in place of LEVINSON, J., Recused.

KLEIN, Justice.

We granted certiorari to review the Intermediate Court of Appeals (ICA) opinion vacating and remanding a circuit court order denying Warren David Miller's motion for discharge or conditional release from the Ha-

wai'i State Hospital. *State v. Miller*, No. 16677 (Haw.Ct.App. Jan. 9, 1995), *reconsideration denied*, 77 Hawai'i 501, 889 P.2d 78, *cert. granted*, 78 Hawai'i 421, 895 P.2d 172 (1995). We reverse. We also, pursuant to Rule 2(a) of the Rules of the Intermediate Court of Appeals, direct that an order depublishing the ICA's opinion be filed concurrently with this opinion.

## I. BACKGROUND

On September 28, 1977, Miller was indicted on charges of attempted rape in the first degree, attempted murder, attempted sodomy in the first degree, kidnaping, and four counts of sexual abuse in the first degree.[1] On July 10, 1978, the circuit court granted Miller's motion for acquittal "on the ground of mental disease or disorder excluding responsibility." The circuit court found Miller dangerous and committed him to the Hawai'i State Hospital, where he was to be held in "maximum security" because of his "high degree of dangerousness."

Prior to the current petition, the circuit court denied five requests for release filed by Miller between 1980 and 1989. On June 25, 1991, Miller once again sought release. The circuit court held hearings in August and October of 1992. Only one of the experts who testified at the hearing considered Miller mentally ill, dangerous, and unfit to be released. After hearing all the evidence and the arguments of counsel, the circuit court denied Miller's petition for conditional release.

In its findings of fact, the circuit court found by "clear and convincing evidence that Warren Miller currently suffers from a mental disease, disorder or defect of sexual sadism and antisocial personality." The court further found by "clear and convincing evidence that a conditional release from [Hawai'i] State Hospital would pose a mild danger to others in the community." Although Hawai'i Revised Statutes (HRS) § 704–411(4) (1993) places the burden on the insanity acquittee to prove, by a preponderance of the

---

1. The relevant factual background is set forth in *State v. Hernandez*, 61 Haw. 475, 605 P.2d 75 (1980).

evidence, that he or she is fit to be released, the circuit court adopted the clear and convincing burden of proof based on its conclusion that:

[t]he United State[s] Supreme Court has ruled in [*Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992),] that a State cannot continue the commitment of a defendant in a mental institution unless the State can prove by clear and convincing evidence that the defendant has a mental illness and is dangerous.

On appeal to the ICA, Miller claimed that the circuit court's findings of fact were clearly erroneous because the state failed to meet its burden of proof, either by a preponderance of the evidence under HRS § 704–411(4), or by clear and convincing evidence mandated by *Foucha*.

The ICA's majority opinion rejected the clear and convincing burden test that the circuit court imported from *Foucha*. The majority also disagreed with Miller's argument that *Foucha* and *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), require application of the clear and convincing burden of proof. The court distinguished both of these cases, indicating that *Jones* was inapposite because Miller is an insanity acquittee, rather than a civil committee, and that *Foucha* was distinguishable because the state had not relinquished its claim that Miller was mentally ill, as Louisiana had in *Foucha*. Thus, the ICA held:

(1) Miller's motion [for conditional release] must be granted unless the State (a) alleges that Miller (i) suffers from one or more mental illnesses, and (ii) is dangerous, and (b) proves by a preponderance of the evidence that one or more of the alleged mental illnesses are mental illnesses as defined by law; and, if the State satisfies the above requirements, the burden then shifts and (2) Miller's motion must be denied unless Miller proves by a preponderance of evidence that (a) he is not then suffering from one or more of the alleged mental illnesses; (b) he is not then dangerous; or (c) his dangerousness does not result from any of his mental illnesses.

Therefore, we vacate and remand for reconsideration in the light of this opinion.

The ICA therefore vacated the circuit court's order and remanded the case for further proceedings because the "evidentiary hearing was conducted without a clear understanding of which side had to prove what and to what degree."

The ICA also directed the circuit court to make a specific finding as to whether Miller suffered from a "legally recognized mental illness." The ICA referred the circuit court to HRS § 704–400 (1993), which defines a "mental illness" as a

physical or mental disease, disorder, or defect, not including abnormality manifested only by repeated penal or otherwise antisocial conduct, that results in the person's lack of substantial capacity to either appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

According to the ICA, it is unclear from the circuit court order if Miller's diagnosis of antisocial personality disorder constitutes a "legal mental illness," or an "abnormality manifested only by repeated penal or otherwise antisocial conduct."

The dissenting opinion in *Miller* argued that *Foucha* mandates an insanity acquittee be afforded the same procedural protections that are provided to the civil committee. The dissent also had "serious reservations" about finding Miller legally mentally ill under "either [the preponderance of the evidence or the clear and convincing evidence] standard."

Both Miller and the state filed an application for a writ of certiorari. Because this case presents an important issue concerning the release of insanity acquittees from a mental health facility, we granted certiorari.

## II. *DISCUSSION*

Miller argues that the ICA majority opinion should be reversed because: (1) the allocation of the burden of proof on the insanity acquittee to prove, by a preponderance of the evidence, that he or she is eligible for release violates his right to due process and equal protection of the laws; (2) the ICA erred in using the definition of a lack of penal respon-

sibility under HRS § 704–400 to define "mental illness" for purposes of a discharge or conditional release proceeding; and (3) there was insufficient evidence to support the circuit court's conclusion that Miller is mentally ill and a danger to the community.

The state urges this court to reverse that portion of the ICA opinion vacating the circuit court's order denying Miller's motion for conditional release, and remanding the case for further proceedings. According to the state, the circuit court's order should be affirmed because (1) the circuit court did not clearly err in denying Miller's motion for release, and (2) if there was error, it was harmless because the state satisfied a higher level of proof than that required by law.

We will examine these arguments seriatim.

A. *The allocation of the burden on the insanity acquittee to prove, by a preponderance of the evidence, that he or she is no longer mentally ill or dangerous does not violate the insanity acquittee's right to due process or equal protection of the laws.*

1. *Due Process*

■ The Hawai'i and United States Constitutions mandate that a person shall not be deprived of life, liberty or property without due process of law. Haw. Const. art. I, § 5; U.S. Const. amend. XIV, § 1. Freedom from unjustified governmental intrusions into personal security and bodily autonomy are at the core of the liberty protected by due process. *Foucha*, 504 U.S. at 80, 112 S.Ct. at 1785. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protec-

tion." *Id.* As a matter of due process, an insanity acquittee is entitled to release when he or she has recovered his or her sanity or is no longer a danger to himself or herself or society. *Id.* at 77–78, 112 S.Ct. at 1784 (quoting *Jones*, 463 U.S. at 370, 103 S.Ct. at 3053). Under HRS § 704–415 (1993),[2] the insanity acquittee has the burden of proving his or her right to release by a preponderance of the evidence.

■ In *Miller*, the ICA concluded that "HRS § 704–415's imposition upon the [insanity acquittee] of the burden of proving his or her lack of mental illness or lack of resulting dangerousness by a preponderance of the evidence" is constitutionally valid. *Miller* and the ICA dissent maintain that such a requirement violates Miller's right to due process under *Foucha*.

Miller misconstrues *Foucha*. In *Foucha*, the United States Supreme Court held that a Louisiana statute violated due process because it permitted the state to confine an insanity acquittee to a mental institution without a finding that he or she was both mentally ill and dangerous. 504 U.S. at 77–78, 112 S.Ct. at 1784. The Louisiana statute placed the burden on the insanity acquittee to prove, by a preponderance of the evidence, that he or she was no longer dangerous. *Id.* at 73, 112 S.Ct. at 1781. If the court found that he or she failed to carry this burden, the insanity acquittee could be returned to the mental institution "whether or not he [or she was] mentally ill." *Id.* In Foucha's case, a review panel recommended that Foucha be released because he had recovered from his temporary drug-induced psychosis. *Id.* at 74, 112 S.Ct. at 1782. Louisiana did not

**2.** HRS § 704–415 states:

If the court is satisfied by the report filed pursuant to section 704–414, and such testimony of the reporting examiners as the court deems necessary, that the discharge, conditional release, or modification of conditions of release applied for may be granted without danger to the committed or conditionally released person or to the person or property of others, the court shall grant the application and order the relief. If the court is not so satisfied, it shall promptly order a hearing to determine whether such person may safely be discharged or released. Any such hearing shall be deemed a civil proceeding and the

burden shall be on the applicant to prove that the person may safely be released on the conditions applied for or discharged. According to the determination of the court upon the hearing, the person shall thereupon be discharged, or released on such conditions as the court determines to be necessary, or shall be recommitted to the custody of the director of health, subject to discharge or release only in accordance with the procedure prescribed in section 704–412.

Act 232, § 1 shifted the burden from the state to the insanity acquittee to prove that the insanity acquittee may be released safely. 1982 Haw. Sess.L. Act 232, § 1 at 432–33.

dispute the panel's finding; it was not required to under its statute. Foucha, however, was unable to prove that he was no longer dangerous. Consequently, the court denied his petition for release. *Id.* at 75, 112 S.Ct. at 1782.

The statute in this case does not suffer from the constitutional defects found in *Foucha.* HRS § 704-415 states in relevant part that the insanity acquittee must prove that he or she may be *safely released.* An insanity acquittee who has demonstrated that he or she has recovered from the mental illness or is no longer dangerous is safe to be released. *Foucha,* 504 U.S. at 77-78, 112 S.Ct. at 1784 (quoting *Jones,* 463 U.S. at 370, 103 S.Ct. at 3053). Accordingly, we interpret HRS § 704-415 as requiring both a mental illness and dangerousness. *See In re Doe, Born on January 5, 1976,* 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (when possible, the court "interprets enactments of the [l]egislature ... so as to uphold their constitutionality.") (citations omitted).

Furthermore, unlike Foucha, the state in this case did not concede that Miller was cured of his mental illness. To the contrary, the state has presented evidence and argued before the circuit court that Miller still suffers from a mental illness. Accordingly, we hold that the release provisions in this case do not violate due process under *Foucha.*

Miller nevertheless maintains that the rationale and principle espoused by *Jones* and *Foucha* require that the burden be placed on the government to prove, by clear and convincing evidence, that the insanity acquittee is not fit to be released. We are not convinced by this argument.

In *Jones,* the seminal case dealing with the initial commitment of individuals following an acquittal by reason of insanity, the United States Supreme Court upheld a District of Columbia code that allowed the government to commit an insanity acquittee to a mental facility following proof by a preponderance of the evidence that he or she was insane and dangerous. 463 U.S. at 370, 103 S.Ct. at 3052. Jones had argued that the Code was unconstitutional because proof of his insanity was based on a preponderance of the evidence standard, as compared to the clear and convincing requirement for a civil commitment. *Id.* at 366-67, 103 S.Ct. at 3050-51. The Court held that the lower standard of proof for insanity acquittees did not violate due process. *Id.* at 368, 103 S.Ct. at 3051. It found "important differences between the class of potential civil commitment candidates and the class of insanity acquittees that justify differing standards of proof." *Id.* at 367, 103 S.Ct. at 3051. An acquittal by reason of insanity, the Court explained, proved that the person committed a criminal act, and that he or she committed the act as a result of a mental illness. *Id.* at 363, 103 S.Ct. at 3049. As such, "there is good reason for diminished concern" that the insanity acquittee is being committed for mere "idiosyncratic behavior." *Id.* at 367, 103 S.Ct. at 3051. "Accordingly, there is no reason for adopting the same standard of proof in both cases." *Id.*

Likewise, in *Thompson v. Yuen,* 63 Haw. 186, 188, 623 P.2d 881, 883 (1981), this court held that an insanity acquittee could be committed on proof by a preponderance of the evidence that he or she is insane and dangerous, even though a higher burden of proof is required for civil commitments. We held:

> There is justification for the preponderance of proof standard for confinement of the insanity-acquittee even assuming a higher standard is required prior to civil commitment for propensity.

> . . . .

> The difference between the classes for purposes of burden of proof, is in the extent of possibility and consequence of error. If there is error in a determination of mental illness that results in a civil commitment, a person may be deprived of liberty although he never posed any harm to society. If there is an [sic] similar error in confinement of an insanity-acquittee individual, there is not only the fact of harm already done, but the substantial prospect that the same error, ascribing the quality of mental disease to a less extreme deviance, resulted in a legal exculpation where there should have been legal responsibility for the antisocial action.

*Id.* at 189, 623 P.2d at 883 (citing *United States v. Brown,* 478 F.2d 606, 611 (D.C.Cir. 1973)).

■ Although *Jones* and *Thompson* dealt with an initial commitment proceeding, and not a release proceeding,[3] the reasoning of those cases may be extended to the release process. Like the initial commitment proceeding, there is a presumption of a continuing mental illness and dangerousness at the time of the release hearing. *See Jones,* 463 U.S. at 366, 103 S.Ct. at 3050 (holding that it is common sense to conclude that a person whose mental illness is sufficient to lead to a criminal act will likely remain ill and in need of treatment). Therefore, so long as the basis for confining the insanity acquittee remains intact—i.e., the insanity acquittee is still mentally ill and dangerous—the state may require the insanity acquittee to prove his or her eligibility for release.

As discussed previously, *Foucha* did not squarely address the constitutionality of placing the burden of proof on the insanity acquittee at the release hearing. However, a careful reading of that case indicates that the Supreme Court tacitly approved of such a procedure. For instance, the Court in *Foucha* relies heavily on *Jones* and its disparate treatment of insanity acquittees. The Court stated that so long as there is a legitimate basis for the continuing confinement of the insanity acquittee, the insanity acquittee may be treated differently from the civilly committed individual. 504 U.S. at 85, 112 S.Ct. at 1788. In the instant case, the state has alleged and argued that Miller, unlike Foucha, is still suffering from a mental illness that renders him dangerous. Therefore, because the state continues to have a legitimate reason to keep Miller in the mental facility, it may require him to prove his eligibility for release.

The *Foucha* court also meticulously distinguished Foucha from an insanity acquittee, instead of invalidating the Louisiana statute on its face. The Court held the Louisiana statute unconstitutional largely because, "the

basis for holding Foucha in a psychiatric facility as an insanity acquittee had disappeared" when Louisiana acknowledged that Foucha was no longer mentally ill. *Id.* at 78, 112 S.Ct. at 1784. It logically follows that if Louisiana had successfully argued that Foucha was still mentally ill, as the state did in this case, Louisiana would have had a sufficient basis to recommit Foucha.

Finally, conspicuously absent from *Foucha* is a holding that the state must provide the same release procedures for insanity acquittees and civil committees. Given that the issue in *Foucha* was an insanity acquittee's petition for release, we find the Court's silence to be persuasive evidence of its approval of the different standards of proof at the release proceeding.

For the reasons stated above, we hold that HRS § 704–415 does not violate due process principles. At the release hearing, the insanity acquittee bears the burden of proving by a preponderance of the evidence freedom from mental illness and dangerous propensities. *See Hartman v. Summers,* 878 F.Supp. 1335 (C.D.Cal.1995); *State v. Tooley,* 875 S.W.2d 110 (Mo.1994); *Hearne v. United States,* 631 A.2d 52 (D.C.Ct.App.1993); *U.S. v. Jackson,* 815 F.Supp. 195 (N.D.Tex.1993), *aff'd,* 19 F.3d 1003 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 237, 130 L.Ed.2d 160 (1994); *Nagel v. State,* 262 Ga. 888, 427 S.E.2d 490 (1993); *United States v. Phelps,* 955 F.2d 1258 (9th Cir.1992), *cert. denied,* 504 U.S. 989, 112 S.Ct. 2977, 119 L.Ed.2d 595 (1992); *Mental Hygiene Legal Servs. v. Rhodes,* 195 A.D.2d 160, 606 N.Y.S.2d 834 (1994); *People v. Sword,* 29 Cal.App.4th 614, 34 Cal.Rptr.2d 810 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1977, 131 L.Ed.2d 865 (1995).

### 2. *Equal Protection*

Miller also argues that HRS § 704–415 violates his right to equal protection of the laws because it treats insanity acquittees differently from civil committees. Under HRS

---

**3.** *Jones* expressly did not decide whether the District of Columbia's release provisions, which, like our statute, require the insanity acquittee to prove, by a preponderance of the evidence, that

he or she is no longer mentally ill or dangerous, comported with the requirements of due process and equal protection. 463 U.S. at 363 n. 11, 103 S.Ct. at 3049 n. 11.

§§ 334–60.2 (1993)[4] and 334–60.5 (1993),[5] a civil committee must be released from a psychiatric facility unless the state can (1) prove beyond a reasonable doubt that the civil committee is mentally ill, and (2) prove by clear and convincing evidence that the civil committee is imminently dangerous and in need of care or treatment. HRS § 704–415,[6] on the other hand, places the burden on the insanity acquittee to prove, by a preponderance of the evidence, that he or she should be released.

■ The guarantee of equal protection of the laws under Hawai'i and United States Constitutions requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *State v. Bloss*, 62 Haw. 147, 157, 613 P.2d 354, 360 (1980). However, "[e]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 113, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966). In the absence of a suspect classification or an intrusion upon a funda-

mental constitutional right, the challenged classification must bear some rational relationship to legitimate state purposes. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973); *Baehr v. Lewin*, 74 Haw. 530, 572, 852 P.2d 44, 64, *reconsideration and clarification granted in part*, 74 Haw. 650, 875 P.2d 225 (1993). Neither a suspect classification nor a fundamental constitutional right is implicated in this case. "[A]lthough commitment to a mental health institution involves a significant loss of liberty, a person who is found not guilty of a crime by reason of insanity does not have a fundamental right to unrestricted liberty." *People v. Wilder*, 33 Cal.App.4th 90, 39 Cal.Rptr.2d 247, 256 (1995) (citing *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979)). As such, the different release procedures for insanity acquittees and civil committees need only be justified by a rational basis. *See Jones*, 463 U.S. at 362 n. 10, 103 S.Ct. at 3048 n. 10.

■ In 1982, the legislature determined that it is in the best interest of the public to place the burden on the insanity acquittee to prove that he or she is eligible for release.[7]

---

**4.** HRS § 334–60.2 states:
   A person may be committed to a psychiatric facility for involuntary hospitalization, if the court finds:
   (1) That the person is mentally ill or suffering from substance abuse;
   (2) That the person is imminently dangerous to self or others, is gravely disabled or is obviously ill; and
   (3) That the person is in need of care or treatment, or both, and there is no suitable alternative available through existing facilities and programs which would be less restrictive than hospitalization.

**5.** HRS § 334–60.5(i) states:
   (i) If after hearing all relevant evidence, including the result of any diagnostic examination ordered by the court, the court finds that an individual is not a person requiring medical, psychiatric, or other rehabilitative treatment or supervision, the court shall order that the individual be discharged if the individual has been hospitalized prior to the hearing. If the court finds that the criteria for involuntary hospitalization under section 334–60.2(1) has been met beyond a reasonable doubt and that the criteria under sections 334–60.2(2) and 334–60.2(3) have been met by clear and convincing evidence, the court may issue an order

to any police officer to deliver the subject to a facility that has agreed to admit the subject as an involuntary patient, or if the subject is already a patient in a psychiatric facility, authorize the facility to retain the patient for treatment for a period of ninety days unless sooner discharged . . . .

**6.** *See supra* note 2.

**7.** The House Judiciary Committee stated:
   Your Committee finds that the Department of Health and the acquitted person are in the best position to produce medical records and evidence regarding the person's mental status, and that, . . . they should therefore bear the burden of proof in determining whether the person should be released.
Hse. Stand. Comm. Rep. No. 465–82, in 1982 House Journal, at 1102. Likewise, the Senate Judiciary Committee stated:
   The bill, as amended, would shift the burden of persuasion onto the parties most capable of bearing it, particularly where the institution is the applicant, in addition to resolving all doubts in favor of the public. Your Committee is convinced that where the state has previously shown the person to be dangerous, the burden to show a change of status should be placed on the person(s) alleging that change.

The legislature's determination is reasonable. Although both the insanity acquittee and the civil committee are committed for the purpose of receiving treatment for their mental illness, *see Jones*, 463 U.S. at 369, 103 S.Ct. at 3052, there is unquestionably an increased risk to the public associated with the release of an insanity acquittee. Unlike the civil committee, the insanity acquittee has demonstrated his or her dangerousness by engaging in criminal behavior. The insanity acquittee also raised mental illness as a defense to a criminal charge and there has been an adjudication that he or she was legally insane when the criminal act was committed. Therefore, there is a rational basis for treating the insanity acquittee differently from the civil committee at the release proceeding.

Miller's reliance on *Foucha* for his equal protection argument is also misplaced. In *Foucha*, a Supreme Court plurality found that the Louisiana statute also violated equal protection. 504 U.S. at 85, 112 S.Ct. at 1788. As in the due process analysis, critical to the plurality's equal protection discussion was the fact that the state had conceded that Foucha was no longer mentally ill. Accordingly, he could no longer be treated as an insanity acquittee. Unlike Foucha, the state in this case contested Miller's claim that he was cured of his mental illness. Therefore, *Foucha* is also inapplicable to Miller's equal protection argument.

Miller further argues that he must be treated like a civil committee because there

Sen. Stand. Comm. Rep. No. 712–82, in 1982 Senate Journal, at 1252.

**8.** As Miller points out, he was acquitted and committed in 1978 prior to the amendment of HRS § 704–408. The procedure prior to amendment read:

If the report of the examiners filed pursuant to section 704–404 states that the defendant at the time of the conduct alleged suffered from a physical or mental disease, disorder, or defect which substantially impaired his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law, and the court, after a hearing if a hearing is requested, is satisfied that such impairment was sufficient to exclude responsibility, the court, on motion of the defendant, shall enter judgment of acquittal on the ground of physical or mental disease, disorder, or defect excluding responsibility.

was no judicial finding that he committed the offense at the time of his commitment.[8] The statute was amended subsequent to Miller's acquittal by reason of insanity,[9] and the insanity defense was only later explicitly made an affirmative defense.[10]

Miller misconstrues the statute under which he was acquitted. Under the 1976 version of HRS § 704–408, the court entered a judgment of acquittal by reason of insanity only upon the motion of the defendant. "If the defendant maintains that he did not engage in the conduct alleged, or has a defense in addition to that excluding responsibility, he can, of course, withhold the motion and the case will proceed to trial." *Commentary* to HRS § 704–408 (1976). Therefore, in filing the motion for acquittal by reason of insanity, Miller conceded that he engaged in the criminal behavior. Accordingly, Miller may be treated like any other insanity acquittee, even though he was acquitted under the previous version of HRS § 704–408.

Based on the foregoing, we hold that HRS § 704–415 does not violate equal protection. The state may, consistent with the Equal Protection Clause, place the burden on the insanity acquittee to prove, by a preponderance of the evidence, that he or she should be released.

Just as equal protection does not require that the state provide an insanity acquittee with the same procedures as a civil com-

HRS § 704–408 (1976).

**9.** After amendment, the statute now reads:

If the report of the examiners filed pursuant to section 704–404, or the report of examiners of the defendant's choice under section 704–409, states that the defendant at the time of the conduct alleged suffered from a physical or mental disease, disorder, or defect which substantially impaired the defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of law, the court shall submit the defense of physical or mental disease, disorder, or defect to the jury or the trier of fact at the trial of the charge against the defendant.

HRS § 704–408 (1993), as revised by 1980 Haw. Sess. L. Act 222, § 1 at 373.

**10.** HRS § 704–402(1) (1993) states: "Physical or mental disease, disorder, or defect excluding responsibility is an affirmative defense."

mittee prior to commitment, *Jones*, 463 U.S. at 367–68, 103 S.Ct. at 3051–52, equal protection does not require the state to provide these different groups with the same procedures prior to release. The differences in release procedures ... reflect the distinctions between insanity acquittees and civil committees.

*Hartman*, 878 F.Supp. at 1347.

B. *The ICA correctly defined a "mental illness" for purposes of a release proceeding as "a physical or mental disease, disorder, or defect, not including abnormality manifested only by repeated penal or otherwise antisocial conduct, that results in the person's lack of substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law."*

▇ The ICA tracked the language of HRS § 704–400, and defined "mental illness" for purposes of a release proceeding as

a physical or mental disease, disorder, or defect, not including abnormality manifested only by repeated penal or otherwise antisocial conduct, that results in the person's lack of substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

▇ Miller argues that this definition is "confusing" and "unworkable." Miller suggests that the term should be defined by psychological or psychiatric experts. The legal definition of the term "mentally ill," however, is not necessarily the same as its definition in psychiatry or psychology. *State v. Freitas*, 62 Haw. 17, 19, 608 P.2d 408, 410 (1980) (citing *State v. Nuetzel*, 61 Haw. 531, 606 P.2d 920 (1980)). The ICA's definition accurately defines the legal definition of a "mental illness," not only for the purposes of the initial commitment following an acquittal by reason of insanity, but also for the determination of the insanity acquittee's eligibility for release.

Miller's confusion stems from his misplaced focus on the term "unlawful conduct" in the definition. Miller misinterprets "conduct" to mean "specific conduct." Consequently, Miller maintains that under the ICA's definition, a myriad of the insanity acquittee's incidents of misconduct will be paraded before the court.

First, we see no problem with the circuit court considering the insanity acquittee's past misconduct in determining whether the insanity acquittee is still suffering from a mental illness. The court has discretion to consider all relevant evidence, including expert testimony, the insanity acquittee's misconduct, and observations of the insanity acquittee, in determining whether the insanity acquittee is legally insane.

▇ Second, "conduct," is defined as a "personal behavior; [a] way of acting[.]" The Random House College Dictionary 281 (rev. ed.1979). Therefore, under the ICA's definition, the inquiry is not limited to the insanity acquittee's past unlawful conduct. Rather, the inquiry is on the individual's *present ability* to appreciate the wrongfulness of his or her acts or to conform his or her behavior to the requirements of law. The focal point of the release proceeding is not on past acts, but on current diagnoses of a present mental illness, disease or disorder that renders the person dangerous.

Accordingly, we hold that the ICA did not err in referring to HRS § 704–400's legal definition of a "mental illness" for purposes of determining an insanity acquittee's eligibility for release.

C. *There was sufficient evidence for the circuit court to conclude that Miller had failed to prove, by a preponderance of the evidence, that he was no longer mentally ill or dangerous.*

▇ Miller joins the ICA's dissenting opinion in arguing that, regardless of the proper burden of proof, there was insufficient evidence for the trial court to conclude that Miller was unfit for release.

▇ In reviewing sufficiency of the evidence, the appellate court must view the evidence in the light most favorable to the state and determine if there was substantial evidence to support the conclusion of the

trier of fact. *State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Id.* Moreover, "it is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence[.]" *Tachibana v. State,* 79 Hawai'i 226, 239, 900 P.2d 1293, 1306 (1995). Accordingly, the circuit court is "vested with the authority to make the ultimate decision regarding whether the evidence establishes the requisite conditions for release." *State v. Dudley,* 903 S.W.2d 581, 584 (Mo.App. W.D.1995) (citing *State v. Ross,* 795 S.W.2d 648, 650 (Mo.App. 1990)).

In the instant case, Dr. Gary Farkas, a court-appointed psychologist, testified that Miller was suffering from sexual sadism, antisocial personality, and psychoactive substance abuse. The circuit court found Dr. Farkas' opinions to be credible and trustworthy. Dr. Farkas also testified that Miller was dangerous. Therefore, there was substantial evidence for the circuit court to conclude that Miller had failed to prove, by a preponderance of the evidence, that he was no longer mentally ill or dangerous.

D. *The ICA erred in vacating the circuit court order and remanding the case for further proceedings.*

The state alleges that the ICA erred in vacating the circuit court order and remanding for further proceedings. The state argues that the circuit court order denying Miller's petition for release should be affirmed because (1) the circuit court did not clearly err, and (2) if there was error, it was harmless because the state proved its case to a higher level of proof than that required by law.

The ICA explained in its Order Denying Motion for Reconsideration filed on January 27, 1995, that the circuit court's order was vacated and remanded because "the evidentiary hearing was conducted without a clear understanding of which side had to prove what and to what degree." According to the

ICA majority opinion, the state has the initial burden at the discharge or conditional release hearing to prove, by a preponderance of the evidence, that the insanity acquittee is suffering from a legal mental illness that renders him or her dangerous to himself or herself or others. The burden then shifts to the insanity acquittee to prove by a preponderance of the evidence that he or she is not suffering from a mental illness or that he or she is no longer dangerous. Because the state did not allege and prove by a preponderance of the evidence that Miller suffers from a legally recognized mental illness, the ICA vacated the circuit court order and remanded this case for further proceedings.

We disagree with the ICA. The applicant's status as an insanity acquittee carries with it a presumption that the insanity acquittee is still suffering from a mental disease, disorder, or defect, and is dangerous. *See Jones,* 463 U.S. at 366, 103 S.Ct. at 3050. It would be superfluous to require the state to once again allege and prove that the insanity acquittee is suffering from a mental illness and is dangerous. Under our statutory scheme,[11] the burden remains at all times with the insanity acquittee to prove that he or she is eligible for discharge or conditional release.

Having determined that the insanity acquittee has the burden of proof throughout the release proceeding, we next consider whether the circuit court's order should have been vacated or affirmed. At the conclusion of the release hearing, the circuit court found that Miller suffers from antisocial personality disorder and sexual sadism, and that he is dangerous. The circuit court's only error stems from the misapplication of *Foucha.* Rather than placing the burden on Miller to prove his eligibility for release by a preponderance of the evidence, the circuit court placed the burden on the state to prove by clear and convincing evidence that Miller was not fit to be released. The error obviously did not prejudice Miller, but actually benefitted him. The onus was erroneously placed on the state to prove, by clear and convincing evidence, that Miller was both insane and dangerous. We therefore hold that the cir-

11. *See supra* note 2.

**280**

cuit court's misapplication of the standard of proof in this case was harmless to Miller.

The ICA also decided to vacate and remand the circuit court's order because the circuit court failed to specifically find that Miller suffered from a legally recognized mental illness. The ICA correctly observes that it is unclear if Miller's diagnoses of antisocial personality disorder constitute a legal mental illness, or an abnormality manifested only by repeated penal or otherwise antisocial conduct. However, we need not examine this issue because the circuit court also found that "Miller currently suffers from a mental disease, disorder or defect of sexual sadism[.]"

### III. CONCLUSION

We reverse the ICA and affirm the circuit court order denying Miller's motion for discharge or conditional release from the Hawai'i State Hospital. We further direct that an order depublishing the ICA opinion, pursuant to Rule 2(a) of the Rules of the Intermediate Court of Appeals, be filed concurrently with this opinion.