[No. 68750-1.   En Banc.]
Argued October 17, 2000.      Decided March 15, 2001.

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL GORDON PLATT, *Petitioner*.

*Jason B. Saunders* (of *Washington Appellate Project*), for petitioner.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine, Deputy*, for respondent.

*Bernadette J. Foley* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

TALMADGE, J.[*] — We must decide in this case who bears the burden of proof at a hearing under RCW 10.77.150 on the conditional release of an individual found not guilty of a felony by reason of insanity and committed to a state hospital for treatment. Based on the language of RCW 10.77.150 and RCW 10.77.200, we hold the individual committed to the state hospital bears the burden of proving he or she is a fit subject for conditional release to a community setting. We affirm the decision of the Court of Appeals.

---

[*]Justice Talmadge is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).

## ISSUE

Under RCW 10.77.150, who bears the burden of proof when an individual found not guilty by reason of insanity and committed to a state hospital seeks conditional release?

## FACTS

During the night of December 13, 1993, Daniel Platt attempted to elude a pursuing police car. Following a high-speed chase at speeds of up to 80 miles per hour on Everett streets, during the course of which he ran several red lights and stop signs, Platt was caught by the police. He was combative and resisted arrest; he asked the police to call the White House and the Joint Chiefs of Staff. He claimed he was bleeding. He told the arresting officers he was on the Federal Bureau of Investigation, Central Intelligence Agency, and Secret Service hit lists and he had fled from the officers because he believed they were agents sent to kill him.

The State charged Platt with attempting to elude a pursuing police vehicle, a felony under RCW 46.61.024. Following a Western State Hospital evaluation, the parties stipulated to a finding of not guilty by reason of insanity. The trial court found Platt not guilty by reason of insanity in August 1994 and placed him on conditional release, requiring him to undergo mental health treatment, take prescribed medications, and report to the Department of Corrections.

Platt promptly violated the terms of the conditional release by failing to continue treatment, sending threatening letters, and making threatening phone calls. He returned to Western State Hospital where he spent much of 1995.

Platt was again conditionally released in December 1995 and resumed working as a pharmacist, his chosen profession.[1] In January 1996, the State petitioned the trial court

---

[1] Throughout much of the period of his intermittent conditional releases, Platt worked as a pharmacist generating complaints about poor professional perfor-

to issue a bench warrant for Platt's arrest, alleging he had failed to take his medications and he was delusional. Platt made threats involving firearms to his family, neighbors, and public officials and implied he would take his own life. He specifically referenced possession of an "Uzi" or AK-47. The threats prompted people to secure no-contact orders against Platt. Platt asserted he was hiding in a government witness relocation program and his deceased wife was still alive. The trial court modified Platt's conditions of release in January 1996, but did not issue a bench warrant for his detention.

In December 1996, Platt was working as a pharmacist when his employer received complaints he was making mistakes in filling and labeling prescriptions. In December 1996, Platt met with an investigator from the Board of Pharmacy. During the interview he told the investigator he was being watched by the Justice Department and his wife and attorneys had been killed by "them." Moreover, the board investigator reported Platt's speech was slurred and he was incoherent. No immediate action was taken against Platt but he further violated the terms of his conditional release in April 1997 by moving to California without permission. He obtained employment there as a pharmacist, but complaints again followed with respect to his job performance.

In June 1997, the State sought revocation of his conditional release. The trial court ordered Platt's recommitment and ultimately determined conditional release would remain revoked "until the Senior Staff at Western State Hospital can determine that he is safe to be in the community." Clerk's Papers (CP) at 23, 66.

Platt again sought conditional release in March 1998. Platt was evaluated by treatment personnel at Western State Hospital, but was guarded in his responses. He was also evaluated by his own expert. In a hearing before the Honorable Kathryn Trumbull, the trial court held Platt had

mance or odd behavior. Platt apparently is no longer licensed as a pharmacist by the State of Washington.

the burden of proof with respect to his conditional release under RCW 10.77.150 and found Platt had not met his burden; the court entered an order denying his conditional release.

On appeal, Division One of the Court of Appeals affirmed the trial court order, holding the statutory language, as well as practical considerations, required Platt to bear the burden of proof. *State v. Platt*, 97 Wn. App. 494, 984 P.2d 441 (1999). Platt petitioned us for review, which we granted.[2]

## ANALYSIS

Under Washington law, a person may plead and prove insanity as an affirmative defense to a felony. The defendant must show "by a preponderance of the evidence that he or she was insane at the time of the offense or offenses with which he or she is charged." RCW 10.77.080. *See also* RCW 10.77.030(2). The substance of the insanity defense is defined in RCW 9A.12.010 as follows:

> (1) At the time of the commission of the offense, as a result of mental disease or defect, the mind of the actor was affected to such an extent that:
>
> (a) He was unable to perceive the nature and quality of the act with which he is charged; or
>
> (b) He was unable to tell right from wrong with reference to the particular act charged.

If the defendant sustains this burden, the defendant is acquitted of the criminal charge.[3]

---

[2] Platt's case is technically moot. In October 1998, during the pendency of the appeal, Platt sought and received a conditional release. All parties to this case believe the issues in this case are of substantial public importance and merit review. We agree. This case presents matters of continuing and substantial public interest requiring our resolution insofar as the issue is likely to recur and we must give guidance on this point to the lower courts. *Westerman v. Cary*, 125 Wn.2d 277, 286, 885 P.2d 827, 892 P.2d 1067 (1994).

[3] Individuals detained under chapter 10.77 RCW have significant procedural rights. They are entitled to periodic mental examinations at least every six months. RCW 10.77.140. They may have their own experts conduct mental

Placing the burden of establishing insanity on the defendant does not violate due process. *See State v. Box*, 109 Wn.2d 320, 745 P.2d 23 (1987) (placing burden of proving insanity on defendant not unconstitutional as a violation of due process). *See also State v. McDonald*, 89 Wn.2d 256, 571 P.2d 930 (1977). Similarly, we have rejected equal protection arguments that individuals detained under chapter 10.77 RCW should be treated as people detained under chapter 71.05 RCW, Washington's civil commitment law. *Alter v. Morris*, 85 Wn.2d 414, 536 P.2d 630 (1975); *State v. Blubaugh*, 80 Wn.2d 28, 33, 491 P.2d 646 (1971) (persons detained under chapter 10.77 RCW are "exceptional class of people"). As we noted in *Alter*:

> We are of the view that the legislature, in drafting these two statutes, contemplated that a prosecutor would proceed by way of criminal charges against persons who have committed serious felonies, reserving the civil process for persons who have committed less serious acts which may amount to felonies. The standard to be applied is one of dangerousness; clearly, past conduct is heavily indicative of the likelihood that a person will commit similar acts which will again endanger others. Therefore, it is logical that those who have reached the attention of the State because of serious antisocial acts, would be subject to more procedural burdens in obtaining their release than are those whose acts are less threatening to the public safety. This latter group is appropriately relieved of such burdens, the responsibility of proving their dangerousness falling accordingly to the State. The distinction in both cases is one of degree; the more serious acts result in a heavier burden on the actor on the issue of whether that person must be confined in the interest of public safety.

*Alter*, 85 Wn.2d at 420.

---

examinations and, if indigent, the individuals can have independent experts appointed by the court to conduct the examinations. *Id.* Such experts are required by statute to be given access to all of the hospital records. *Id.* All of this information is compiled into a periodic report which is given to the Secretary of the Department of Social and Health Services (DSHS). The Secretary reviews the report and presents findings to the court. The court has authority to conduct a hearing and discharge the person from commitment. RCW 10.77.120, .200.

The individual thus acquitted under chapter 10.77 RCW may still be detained for treatment. RCW 10.77.110(1) provides for the detention of persons acquitted by reason of insanity if the person presents a substantial danger to others or a substantial likelihood of committing future criminal acts jeopardizing public safety or security. That individual may be detained until no longer mentally ill or dangerous, but in any event no longer than the maximum possible penal sentence for the crime of which they were acquitted by reason of insanity. RCW 10.77.025.

■ The individual detained pursuant to chapter 10.77 RCW need not be confined for the treatment to a state hospital; the individual may be released from the total confinement of the state hospital into the community subject to conditions. RCW 10.77.110(3). The individual may make an application to the Secretary of the Department of Social and Health Services (DSHS) for conditional release. RCW 10.77.150(1). If the Secretary recommends conditional release, the court *must* provide a hearing for the individual at which the State bears the burden of proving the person is not entitled to conditional release. RCW 10.77.150(1). In Platt's case, the Secretary did not make a favorable recommendation on conditional release. If the Secretary does not recommend a conditional release, the court has discretion with respect to convening a hearing. *Id.* In Platt's case, the trial court determined a hearing was appropriate. The purpose of the hearing is to determine "whether or not the person may be released conditionally without substantial danger to other persons, or substantial likelihood of committing criminal acts jeopardizing public safety or security." RCW 10.77.150(2). For purposes of the hearing on the person's conditional release, "[t]he court, after the hearing, shall rule on the secretary's recommendations, and if it disapproves of conditional release, may do

so only on the basis of substantial evidence." RCW 10.77.150(2).

The statute and case law offer no direct answer to the question of who bears the burden of proof at a conditional release hearing when the Secretary has not made a favorable recommendation. Division Three has placed the burden on the State. *State v. Sommerville*, 86 Wn. App. 700, 707, 937 P.2d 1317 (1997).

Platt contends his reading of the statute is required by due process. But the United States Supreme Court has not specifically addressed this issue. However, it has stated:

> when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society.

*Jones v. United States*, 463 U.S. 354, 370, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983). The Court did not say which party had the burden of proving whether the defendant has regained his sanity or is no longer dangerous. Nor did the Court address that issue in *Foucha v. Louisiana*, 504 U.S. 71, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992), upon which Platt relies. The State there conceded the individual was *no longer mentally ill*, and sought to justify his continued detention based on his continuing dangerousness and antisocial personality. The Court rejected that contention and adhered to the view that both mental illness and dangerousness are required, stating, "the acquittee may be held so long as he is both mentally ill and dangerous, but no longer." *Foucha*, 504 U.S. at 77. In light of the State's concession in *Foucha* that the individual detained was no longer mentally ill, the allocation of the burden of proof was not in issue.

Numerous courts addressing that issue since *Foucha* have concluded, based largely on *Jones*, that the burden of proof may constitutionally be placed on the defendant. *See, e.g., People v. Garlotte*, 958 P.2d 469, 475 (Colo. Ct. App. 1997); *State v. Miller*, 84 Haw. 269, 933 P.2d 606, 612 (1997) (citing cases); *State v. Randall*, 192 Wis. 2d 800, 532 N.W.2d 94, 103 (1995); *People v. Sword*, 29 Cal. App. 4th 614, 34 Cal. Rptr. 2d 810, 815 (1994); *State v. Tooley*, 875 S.W.2d 110 (Mo. 1994); *Hearne v. United States*, 631 A.2d 52 (D.C. App. 1993). Under *Jones*, the finding of not guilty by reason of insanity itself justifies commitment because the defendant's insanity at the time of the crime is presumed to continue after the verdict. Requiring the individual to prove he or she has regained sanity or is no longer dangerous is consistent with that presumption. *See People v. Sword*, 34 Cal. Rptr. 2d at 815-16. These courts ·agree nothing in *Foucha* "mandates a ruling that the statutory placement of the burden of proof on the insanity acquittee to demonstrate his right to release in the first instance is unconstitutional." *Hearne v. United States*, 631 A.2d at 53; *State v. Tooley*, 875 S.W.2d at 113-14.

Moreover, the United States Court of Appeals for the Ninth Circuit found no constitutional infirmity in placing the burden of proof for discharge under RCW 10.77.200 (not distinguishing between conditional and final discharge) on the individual. *Hickey v. Morris*, 722 F.2d 543 (9th Cir. 1983). The court stated:

> [t]he state has a substantial interest in avoiding premature release of insanity acquittees, who have committed acts constituting felonies and have been declared dangerous to society. Because "the insanity acquittal supports an inference of continuing mental illness," *Jones v. United States*, 103 S. Ct. at 3050, the state's interest in protecting society and the acquittee himself justifies placing the burden on insanity acquittees to show that they no longer present a danger. Moreover, because

the defendant himself first raised and proved his insanity, fairness suggests that release should require his own showing of recovery rather than the state's showing of continued insanity.

*Id.* at 548 (some citations omitted).

██ Ultimately, we agree with Judge Agid's well-reasoned opinion below. A person seeking conditional discharge bears the burden of proving entitlement to a conditional release when the Secretary does not make a recommendation for conditional release. The structure of the statute as to conditional release and final discharge is significant. RCW 10.77.200 references *both* conditional release and final discharge. That statute puts the burden on the individual:

The burden of proof shall be upon the petitioner to show by a preponderance of the evidence that the petitioner no longer presents, as a result of a mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.

RCW 10.77.200(2).

It would be anomalous for chapter 10.77 RCW to place the burden of proving insanity on the defendant and the grounds for final discharge on that individual, but then place the burden on the State with respect to the individual's conditional release from a state hospital. The presumption of continued insanity first articulated in *In re Brown*, 39 Wash. 160, 81 P. 552 (1905)[4] applies to conditional release as well as final discharge.

---

[4] Washington law since 1905 has presumed the mental condition of a person acquitted by reason of insanity continues and the burden rests with that individual to prove otherwise:

[I]nasmuch as it was a fact established after a full hearing that the petitioner was insane at the time of the [crime], the presumption is that the same condition continues, and the burden is upon him to show to the contrary.

*Brown*, 39 Wash. at 166. *See also State v. McCarter*, 91 Wn.2d 249, 254-55, 588 P.2d 745 (1978); *State v. Blubaugh*, 80 Wn.2d 28, 36, 491 P.2d 646 (1971); *Soderquist v. Keller*, 21 Wn.2d 1, 10-11, 149 P.2d 528 (1944).

The burden of justifying placing the individual in the community should rest with that individual. Presumably, if that individual proves he or she is no longer mentally ill, such individual would be entitled to a final discharge. If the individual is mentally ill, but the symptoms are controlled by medication or otherwise,[5] a conditional release would be appropriate if the person no longer presents a substantial risk to others or is not a likely candidate to reoffend because of the continued administration of such medications or other treatment.

Judge Agid articulated the policy rationale for this placement of the burden of proof on the individual in her opinion:

> This holding also reflects the policy underlying commitment of persons acquitted by reason of insanity:
>
> > Those subject to criminal commitment have been found beyond a reasonable doubt to have committed an act which, except for their insanity, would have been a criminal act subjecting them to criminal penalties. . . . [P]ast conduct is heavily indicative of the likelihood that a person will commit similar acts which will again endanger others. Therefore, it is logical that those who have reached the attention of the State because of serious antisocial acts, would be subject to more procedural burdens in obtaining their release than are those whose acts are less threatening to the public safety.
>
> When a person has been acquitted by reason of insanity, it is logical for the Legislature to infer that he continues to have a mental illness that makes him dangerous until the Department and/or the court conclude otherwise.
>
> Practical considerations also support this allocation of the burden of proof. Medical professionals cannot do a thorough, reliable examination of a person's mental state without that person's cooperation. If the State had the burden of proof, an insanity acquittee could refuse to participate in testing, prevent the State from obtaining critical information about his mental health, and then seek release because the State cannot prove that he is mentally ill.

---

[5] *See* RCW 10.77.150(3); RCW 10.77.160 as to the supervision of individual's treatment and medications.

*State v. Platt*, 97 Wn. App. at 505 (footnotes omitted).[6]

In the present case, Platt did not meet his burden under RCW 10.77.200(2). Platt remained mentally ill. In January 1998, Western State Hospital senior staff sent the trial court a report on Platt's current status. They recommended against conditional release or final discharge, diagnosing Platt as suffering from moderate bipolar disorder with psychotic features compounded by alcohol abuse, but they also were unable to make an entirely accurate risk assessment because of Platt's reluctance or unwillingness to cooperate with the evaluation. Platt's attorney arranged for an independent evaluation, conducted by psychologist Lee Gustafson. Gustafson found no evidence of a current mental disorder and noted Platt had not experienced symptoms requiring treatment for the past two years. But Gustafson did diagnose a psychotic disorder in remission. He noted Platt's denial of the allegations made by the Pharmacy Board and admitted Platt denied documented past psychotic episodes. CP at 45. Gustafson testified he "would diagnose Mr. Platt as having atypical psychosis that is recurrent" as well as a possible personality disorder. Report of Proceedings at 40. Gustafson noted Platt was guarded and not "self-revealing," Report of Proceedings at 49, 67, but he also thought Platt was not currently suffering any symptoms of his condition, and should not be hospitalized.

On the State's side, Dr. Daisuke Nakashima, from Western State Hospital, testified the team was unable to detect any "blatant psychotic symptoms." Report of Proceedings at 71. Nevertheless, Nakashima concluded Platt did "suffer from an affective disorder with some psychotic features" as well as "bipolar disorder with a psychotic feature," though not "a full-blown manic disorder." *Id.* at 82. But Dr. Nakashima noted diagnosis was complicated by the fact Platt refused to disclose any relevant information about

---

[6] This result is consistent with the burden of proof for conditional release under Washington's former sexual psychopathy law, *State v. McCarter*, 91 Wn.2d 249, 255, 588 P.2d 745 (1978), and the present sexual predator statute, *In re Detention of Petersen*, 138 Wn.2d 70, 90-91, 980 P.2d 1204 (1999).

himself, his illness, or on-going problems, and he concluded this reluctance itself was evidence of a "lesser degree" psychosis in Platt's case. The State also called Jack Cranfill, a social worker who treated Platt at Western State Hospital. Cranfill testified that while Platt did not display signs of an active major psychological disorder, he was guarded and uncooperative in his dealings with the staff which made evaluating his risk level difficult. Both Nakashima and Cranfill felt stress would exacerbate Platt's condition and they recommended against conditional release.

The trial court's findings, based on the experts' testimony, indicated Platt did not meet his burden. The trial court emphasized her concern regarding Platt's refusal to cooperate in the evaluation of his condition:

3. Mr. Platt has a history of psychotic episodes and threatening behavior. He was initially returned to Western State Hospital when it was reported that he was engaging in behavior which suggested he was entering another psychotic episode.

4. Mr. Platt has twice before been placed on conditional release. Each time he has violated the conditions of his release.

5. The staff at Western State Hospital attempted to evaluate Mr. Platt in order to determine if he was safe to be in the community during the course of numerous individual and group sessions. Mr. Jack Cranfill, a member of the Senior Staff, worked with Mr. Platt directly as his psychological social worker.

6. Although Mr. Platt participated in the process of the evaluation he did not cooperate with the substance of the evaluation. During the course of the evaluation Mr. Platt remained guarded and would not provide information necessary to the evaluation. For example, Mr. Platt stated because he had a pending bankruptcy and child custody matter he could not discuss personal information with the staff at Western State Hospital. Personal information about Mr. Platt is necessary in order to perform an accurate risk assessment of him. However whenever Mr. Platt was asked a question regarding pertinent information to the evaluation which he did not wish to answer he would often revert to talking about the bankruptcy.

7.   In order to gain further information about Mr. Platt he was asked to perform several forensic psychological tests. Those tests were performed by Dr. Karen Franklin, Ph.D. and reviewed by her supervisor, Dr. Daisuke Nakashima, Ph.D. Mr. Platt continued to be guarded in his response to test questions. .

8.   The results of the psychological test indicated that in part Mr. Platt's guarded responses and refusal to provide relevant information was intentional.

9.   Mr. Platt is more likely to be dangerous if conditionally released in the community because of his lack of candor regarding himself and inability to recognize major problems in his life and deal with them appropriately. The likelihood of future psychotic episodes is greater because Mr. Platt is unwilling to recognize major stressors in his life and deal appropriately with those stressors.

10.   The Senior Staff at Western State Hospital was unable to make an accurate risk assessment to conditionally release Mr. Platt into the community because of his lack of cooperation with the evaluation process. The Senior Staff did not recommend Mr. Platt's release from Western State Hospital.

CP at 4-5. Substantial evidence supported the trial court's findings that Platt did not meet his burden of proving the factors for conditional release.

## CONCLUSION

An individual acquitted of a felony by reason of insanity who seeks conditional release from total confinement at a state hospital without the recommendation of the DSHS Secretary bears the burden of proving eligibility for conditional release under RCW 10.77.200(2). Platt failed to meet that burden of proof in this case. We affirm the order denying Platt's petition for conditional release.

SMITH, IRELAND, and BRIDGE, JJ., and GUY, J. Pro Tem., concur.
MADSEN, J., concurs in the result.

SANDERS, J. (dissenting) — The majority frames the issue: "Under RCW 10.77.150, who bears the burden of proof

when an individual found not guilty by reason of insanity and committed to a state hospital seeks conditional release?" Majority at 244. A plain reading of RCW 10.77.150 answers the majority's query, but that answer is not the majority's. Rather this statute clearly places the burden on the state to justify continued incarceration.

To claim the federal constitution may permit a more restrictive scheme than state law is no answer since the laws of the State of Washington may provide greater protection to insanity acquittees than is necessarily required by the federal constitution. For example, a plea of not guilty by reason of insanity is ipso facto an adequate constitutional basis for committing the acquittee to a mental facility. *Foucha v. Louisiana*, 504 U.S. 71, 76, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992). However, in this state the insanity acquittee is not presumed to be dangerous at the time of acquittal and such determination, and his resulting commitment, is left to the trier of fact. *See* RCW 10.77.040 regarding instructions to jury on special verdict; RCW 10.77.080 requiring the court to make specific findings of fact substantially similar to those in RCW 10.77.040; RCW 10.77.110(1)-(3) which sets forth different mechanisms for dealing with the insanity acquittee based upon the determination of his level of dangerousness (or lack thereof). Only if an insanity acquittee is dangerous as a result of his mental infirmity may he be committed under our state law.

Once confined, the acquittee may then make application to the secretary for conditional release under state law. RCW 10.77.150(1). This statute differentiates between conditional release petitions brought with the approval of the secretary and those which are brought without the secretary's approval. RCW 10.77.150(2). Those brought with the secretary's recommendation must be granted a hearing; whereas the court has discretion to grant or deny a hearing to an acquittee if the secretary opposes release. *Id.* But in either case the purpose of the hearing is the same: to determine "whether or not the person may be released conditionally without substantial danger to other persons,

or substantial likelihood of committing criminal acts jeopardizing public safety or security." RCW 10.77.150(2).

A plain reading of the statute places the burden of proof at a conditional release hearing on the state. As amicus in the instant matter correctly notes: "No matter how the hospitalized person gets to the hearing stage . . . once the trial court has decided to hold a hearing, RCW 10.77.150(2) provides for only one mode of procedure, one issue to be resolved, and one burden of proof." Br. of Amicus Curiae Washington Association of Criminal Defense Lawyers at 3.

In pertinent part the statute provides:

> The court . . . upon receipt of an application for conditional release with the secretary's recommendation for conditional release, shall . . . schedule a hearing. The court may schedule a hearing on applications recommended for disapproval by the secretary. . . . The issue to be determined at such a hearing is whether or not the person may be released conditionally without substantial danger to other persons, or substantial likelihood of committing criminal acts jeopardizing public safety or security. The court, after the hearing, shall rule on the secretary's recommendations, and *if it disapproves of conditional release, may do so only on the basis of substantial evidence.*

RCW 10.77.150(2) (emphasis added). By its terms the statute mandates conditional release be *denied* only on the basis of substantial evidence, meaning the absence of such evidence requires release. Placing the burden to produce substantial evidence on the one who opposes release is facially inconsistent with imposing the burden of proof on the one who seeks it.

The majority ultimately concludes a prisoner seeking conditional release under RCW 10.77.150 must meet the same burden as one seeking final discharge under former RCW 10.77.200 (1998) because the latter section references both conditional release and final discharge.[7] Majority at 251. But former RCW 10.77.200(3) references both only to

---

[7] LAWS OF 2000, ch. 94, § 16, substituted "release" for "final discharge."

indicate there is nothing which prevents an acquittee from petitioning the court for either.

Former RCW 10.77.200(3) provides:

> Nothing contained in this chapter shall prohibit the patient from petitioning the court for final discharge or conditional release from the institution in which he or she is committed. The issue to be determined on such proceeding is whether the petitioner, as a result of a mental disease or defect, is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions.
>
> Nothing contained in this chapter shall prohibit the committed person from petitioning for release by writ of habeas corpus.

Further, the majority's conclusion ignores the Washington statute which distinguishes those issues to be determined at a conditional release hearing from those to be determined at a final release hearing. The issue for conditional release is simply whether or not the petitioner is dangerous. RCW 10.77.150(2). That provision allows mentally ill acquittees to be conditionally reintroduced into society while under supervision. However at a final discharge hearing the pertinent question is whether "*as a result of a mental disease or defect*" the petitioner represents a danger to society. RCW 10.77.200(2) (emphasis added). Therefore for final discharge the important determination is not simply whether the inmate is mentally ill *or* dangerous, but whether that dangerousness, if any, is the product of mental disease or defect. If it is not, the basis for holding him has evaporated and under *Foucha* he must be released, potential danger notwithstanding. *Foucha*, 504 U.S. at 77, 78.

I simply cannot reconcile the majority's position that it would be anomalous to place the burden on the acquittee at a final discharge hearing and on the state at a conditional release hearing with the statutory text. I see no anomaly to require an acquittee to bear the burden when he seeks final

discharge while at the same time requiring the state to bear the burden to show simply dangerousness at a conditional release hearing. A conditional release is just that, *conditional*. It can be revoked. Moreover unlike final discharge, a conditional release allows the state to retain supervisory authority over the acquittee's daily life.

I am further troubled by the constitutional implications of the majority's ruling. If a statute is constitutional when interpreted in one manner but unconstitutional when interpreted in another, "the legislature will be presumed to have intended a meaning consistent with the constitutionality of its enactment." *State ex rel. Dawes v. Wash. State Highway Comm'n*, 63 Wn.2d 34, 38, 385 P.2d 376 (1963). Construing RCW 10.77.150(2) as does the majority, to place the burden of proof at a conditional release hearing upon the prisoner, not only requires of the prisoner the logical impossibility of proving a negative, but also raises grave constitutional concerns.

The facts here are remarkably similar to those presented in *Foucha*, 504 U.S. at 76. In *Foucha* the superintendent recommended the insanity acquittee be discharged as he was no longer mentally ill; however, doctors were not willing to certify Mr. Foucha was *not* dangerous. *Id.* at 74, 75. The trial court opposed the superintendent's recommendation, determined Mr. Foucha failed to carry his burden of proof, and denied release. *Id.* at 75. But on appeal the Supreme Court held an insanity acquittee "may be held as long as he is both mentally ill and dangerous, but no longer." *Id.* at 77.

Since Mr. Foucha was admittedly no longer mentally ill, the basis for his confinement had evaporated and the state was entitled to hold him no longer. *Id.* at 78. Consequently, the high court held the Louisiana statute requiring a committed, yet no longer mentally ill, person to prove his lack of dangerousness was unconstitutional because it allowed lack of evidence to justify continued commitment. An affirmative showing of mental illness which causes dangerousness, the court held, is the constitutionally mini-

mum basis for continued confinement. The petitioner in the instant matter is no more able to prove he is *not* dangerous than was Foucha. The question must be phrased in the affirmative, *is* he dangerous?

Even assuming Mr. Platt continued to labor under a mental illness at the time of his conditional release hearing, requiring him to prove that he was not dangerous is not constitutionally permissible. As previously noted, there is no presumption in Washington that an insanity acquittee remains dangerous, and under *Foucha* it is "unconstitutional for a State to continue to confine a harmless, mentally ill person." *Foucha*, 504 U.S. at 77 (citing *O'Connor v. Donaldson*, 422 U.S. 563, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975)).

Consequently I cannot agree with the majority's conclusion that "[i]f the individual is mentally ill, but the symptoms are controlled by medication or otherwise, a conditional release would be appropriate if the person no longer presents a substantial risk to others or is not a likely candidate to reoffend." Majority at 252 (footnote omitted). Not so. Such an individual would be entitled to *final discharge*. *Foucha* could not be clearer: It is "unconstitutional for a State to continue to confine a harmless, mentally ill person." *Foucha*, 504 U.S. at 77 (citing *O'Connor v. Donaldson*, 422 U.S. 563). Nor is dangerousness alone a constitutional basis for confinement. *Id.* at 82, 83.

Finally, none of the doctors in either *Foucha* or *Platt* asserted that the petitioners were actually dangerous. In *Foucha* Dr. Ritter testified, " 'I don't think I would feel comfortable in certifying that he would *not* be a danger to himself or other people.' " *Foucha*, 504 U.S. at 82 (quoting App. 18 (emphasis added)). Similarly, in *Platt* the trial court found "Western State Hospital was unable to make an accurate risk assessment to conditionally release Mr. Platt." Clerk's Papers at 9. Just as Dr. Ritter's inability to certify a *lack* of dangerousness was an insufficient basis to confine Foucha, Western State Hospital's inability to

certify a lack of dangerousness with respect to Mr. Platt is equally insufficient.

CONCLUSION

A plain reading of RCW 10.77.150(2) puts the burden of proof at a conditional release hearing upon the state.

I therefore dissent.

ALEXANDER, C.J., and JOHNSON, J., concur with SANDERS, J.