# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70022-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICKEY A. BEAVER, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 27, 2014 |
| | ) | |

VERELLEN, A.C.J. — As a matter of due process, an individual who is found not guilty by reason of insanity may be confined for treatment as long as he is both mentally ill and dangerous. Once the acquittee has been found mentally ill, his insanity is presumed to continue to exist. Because of this presumption, substantive due process does not require a renewed finding of mental illness in order to revoke an insanity acquittee's conditional release. Furthermore, procedural due process does not require such a finding at a revocation hearing primarily because alternative procedures provide acquittees with a meaningful opportunity to demonstrate sanity, thereby minimizing the risk of erroneous commitment. For these reasons, Rickey Beaver has not established that his due process rights were violated by the trial court's order revoking his conditional release without a finding that his mental illness continued to exist. Accordingly, we affirm.

## FACTS

In August 2004, Beaver committed a residential burglary. In August 2005, the trial court entered a judgment of acquittal by reason of insanity pursuant to RCW 10.77.080, finding that Beaver was suffering from a mental disease or defect at the time he committed the offense.[1] The trial court also found that Beaver was dangerous and ordered that he be detained in a state mental hospital.

In July 2011, the trial court granted Beaver a conditional release pursuant to RCW 10.77.150.[2] In 2012, the State sought to have Beaver's conditional release revoked because he violated release conditions. Instead of revoking Beaver's conditional release, the trial court modified the conditions of release.

Beaver again violated several release conditions.[3] In January 2013, the trial court held a revocation hearing to determine whether Beaver's conditional release should be modified or revoked. At the hearing, the trial court expressed concerns about confining Beaver in light of recent medical evaluations suggesting that he was not currently suffering from any mental illness.[4] Nevertheless, the trial court revoked

---

[1] Various forensic psychological reports prepared in 2005 diagnosed Beaver as suffering from a psychotic disorder, paranoia, a significant depressive disorder, cocaine dependence, alcohol and cannabis abuse, posttraumatic stress disorder, and an antisocial personality disorder.

[2] Earlier, in January 2007, Beaver had been granted conditional release, but it was revoked in January 2010 because Beaver violated release conditions.

[3] For example, Beaver used cocaine in October 2012 and drove a motor vehicle under the influence of alcohol in December 2012.

[4] Medical reports prepared in 2012 indicated that Beaver's psychiatric symptoms were in remission and that he had "reached his maximum benefit from psychiatric inpatient services." Clerk's Papers at 119. Indeed, the Department of Social and Health Services, through its Risk Review Board, recommended that Beaver be released from commitment, indicating that "Mr. Beaver has shown no signs or symptoms of mental

Beaver's conditional release "[d]ue to the violations of the conditional release order and the threat to the public presented by Mr. Beaver," and it ordered that he be recommitted for inpatient treatment.[5]

Beaver appealed. While this appeal was pending, Beaver was conditionally released in October 2013 and then finally discharged in May 2014.[6]

## DECISION

Beaver challenges the trial court's order revoking his conditional release. Because Beaver was again conditionally released and then finally discharged while this appeal was pending, the State contends that the claims presented in this appeal should be dismissed as moot. We disagree.

"A moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights."[7] Generally, "we do not consider questions that are moot."[8] However, we may address a moot issue if it presents a matter of "continuing and substantial public interest."[9] In determining whether a sufficient public interest is involved, we consider "(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future

---

illness." Clerk's Papers at 112. In contrast, the Public Safety Review Board recommended revocation and recommitment because it believed that Beaver remained a threat to public safety.

[5] Clerk's Papers at 144.

[6] We grant the State's motion to supplement the clerk's papers to include this order.

[7] Hansen v. W. Coast Wholesale Drug Co., 47 Wn.2d 825, 827, 289 P.2d 718 (1955).

[8] State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012).

[9] Id.

3

guidance to public officers; and (3) the likelihood that the question will recur."[10] We may also consider a fourth factor: the "level of genuine adverseness and the quality of advocacy of the issues."[11]

Given these considerations, we conclude that the moot issues presented here raise matters of continuing and substantial public interest.[12] Notwithstanding that Beaver has been finally released, many other insanity acquittees are subject to conditional release revocation proceedings. We believe that a decision on the trial court's authority to revoke conditional release in the absence of information regarding the acquittee's current mental health condition will provide useful guidance to lower courts and public officers. The parties have adequately briefed and argued the legal issues presented.[13] Thus, we turn to the issues raised in this appeal.

Beaver contends that he was deprived of due process by the trial court's failure to find that he has a current mental illness, and he asserts that the statute authorizing revocation of conditional release is unconstitutional if it does not require such a finding. We disagree.

The federal constitution guarantees that federal and state governments will not deprive an individual of "life, liberty, or property, without due process of law."[14] The due

---

[10] In re Cross, 99 Wn.2d 373, 377, 662 P.2d 828 (1983).

[11] Hart v. Dep't of Soc. & Health Servs., 111 Wn.2d 445, 448, 759 P.2d 1206 (1988).

[12] See In re Dependency of H., 71 Wn. App. 524, 528, 859 P.2d 1258 (1993) ("Where a technically-moot issue implicates due process rights, it is one in which there is sufficient public interest to warrant deciding it.").

[13] See State v. Sansone, 127 Wn. App. 630, 637, 111 P.3d 1251 (2005).

[14] U.S. CONST. amends. V, XIV, § 1.2. Generally, "Washington's due process clause does not afford broader protection than that given by the Fourteenth Amendment to the United States Constitution." State v. McCormick, 166 Wn.2d 689, 699, 213 P.3d

process clause confers both procedural and substantive protections.[15] In his appellate briefing, Beaver does not clearly state whether he believes his recommitment violates the substantive or procedural component. During oral argument, Beaver clarified that he primarily relies upon substantive due process concerns. Regardless, we will address both due process components.

Substantive due process "'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'"[16] The level of review applied in a substantive due process challenge depends upon the nature of the interest involved.[17] "State interference with a fundamental right is subject to strict scrutiny," which "requires that the infringement is narrowly tailored to serve a compelling state interest."[18]

Liberty is a fundamental right.[19] "Accordingly, a civil commitment scheme . . . is constitutional only if it is narrowly drawn to serve compelling state interests."[20] The United States Supreme Court has "'consistently upheld such involuntary commitment statutes' when (1) 'the confinement takes place pursuant to proper procedures and

---

32 (2009). Beaver does not argue that the state constitution provides greater due process protections. See In re Pers. Restraint of Dyer, 143 Wn.2d 384, 393-94, 20 P.3d 907 (2001). Therefore, we conduct our due process analysis solely under the federal constitution. See Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 216, 143 P.3d 571 (2006).

[15] Amunrud, 158 Wn.2d at 216.

[16] Foucha v. Louisiana, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (internal quotation marks omitted) (quoting Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)).

[17] Amunrud, 158 Wn.2d at 219.

[18] Id. at 220.

[19] Foucha, 504 U.S. at 80.

[20] State v. McCuistion, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012), cert. denied, 133 S. Ct. 1460, 185 L. Ed. 2d 368 (2013).

evidentiary standards,' (2) there is a finding of 'dangerousness either to one's self or to others,' and (3) proof of dangerousness is 'coupled . . . with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'"[21] Beyond that, "[s]ubstantive due process requires only that the State conduct periodic review of the patient's suitability for release,"[22] because "[t]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous."[23]

Consistent with these constitutional principles, Washington's commitment scheme allows a defendant to be acquitted of felony criminal charges by reason of insanity if the defendant shows "by a preponderance of the evidence that he or she was insane at the time of the offense or offenses with which he or she is charged."[24] Upon acquittal, the individual may be released if the court finds "that he or she is not a substantial danger to other persons, and does not present a substantial likelihood of committing criminal acts jeopardizing public safety or security."[25] But if the court finds

---

[21] Kansas v. Crane, 534 U.S. 407, 409-10, 122 S. Ct. 867, 869, 151 L. Ed. 2d 856 (2002) (quoting Kansas v. Hendricks, 521 U.S. 346, 357-58, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997)); see also Foucha, 504 U.S. at 77 (holding that, as a matter of due process, an insanity acquittee "may be held as long as he is both mentally ill and dangerous, but no longer"); McCuistion, 174 Wn.2d at 387-88 ("[C]ivil commitment statutes are constitutional only when both initial and continued confinement are predicated on the individual's mental abnormality and dangerousness.").

[22] McCuistion, 174 Wn.2d at 385.

[23] Jones v. United States, 463 U.S. 354, 368, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983); see State v. Reid, 144 Wn.2d 621, 631, 30 P.3d 465 (2001) ("When an insanity acquittee demonstrates he has regained his sanity, the basis for his confinement in a mental institution vanishes and he must be released.").

[24] RCW 10.77.080; see also RCW 10.77.030(2). To establish the insanity defense, the defendant must show that because of a mental disease or defect at the time of the commission of the offense, the defendant was either unable to perceive the nature and quality of the act with which he is charged or was unable to tell right from wrong with reference to the particular act charged. RCW 9A.12.010(1).

[25] RCW 10.77.110(1).

that the acquittee is dangerous, the acquittee may be detained for treatment.[26] An insanity acquittee detained for treatment may be released into the community subject to conditions if the court finds that "the person may be released conditionally without substantial danger to other persons or substantial likelihood of committing criminal acts jeopardizing public safety or security."[27] But the court may revoke the conditional release or modify the terms of release if the defendant violates release conditions or presents a public safety threat.[28]

Beaver's recommitment upon the revocation of conditional release is supported by adequate findings of mental illness and dangerousness.[29] At the revocation hearing here, the trial court determined that Beaver violated release conditions and presented a danger to the community. And Beaver's insanity, as asserted by Beaver in his criminal proceeding and established by the trial court's original findings, was presumed to continue to exist.[30] Given these findings, the State's action in recommitting Beaver was

---

[26] Id. Specifically, the court must find that the acquittee "is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions." Id. Such an individual may be detained until no longer mentally ill or dangerous, but in any event no longer than the maximum possible penal sentence for the crime of which they were acquitted by reason of insanity. RCW 10.77.025.

[27] RCW 10.77.150(3)(c); see RCW 10.77.110(3).

[28] RCW 10.77.190.

[29] See In re Det. of Post, 145 Wn. App. 728, 756, 187 P.3d 803 (2008).

[30] See Jones, 463 U.S. at 366 ("It comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment."); State v. Klein, 156 Wn.2d 103, 114, 124 P.3d 644 (2005) ("'Washington law since 1905 has presumed the mental condition of a person acquitted by reason of insanity continues and the burden rests with that individual to prove otherwise.'" (quoting State v. Platt, 143 Wn.2d 242, 251 n.4, 19 P.3d 412 (2001))).

not arbitrary and his confinement is consistent with substantive due process demands.

Beaver relies on State v. Bao Ding Dang to assert that due process nevertheless requires that the trial court find a current mental illness for revocation.[31] In Bao Ding Dang, our Supreme Court held that the trial court was required to make a finding that the acquittee was dangerous in order to revoke his conditional release. But this finding was required because the trial court had never previously found that the acquittee, who had been conditionally released immediately upon his acquittal, was dangerous: "Because Dang had never been found dangerous—indeed, his conditional release required a specific finding of nondangerousness—the trial court was required to find Dang dangerous to revoke his conditional release."[32] In contrast, the trial court here explicitly found at the time of Beaver's acquittal that he suffered from a mental disease or defect and that he was dangerous. Consequently, Beaver's insanity is presumed to continue.[33] Bao Ding Dang does not support Beaver's substantive due process claim.

Procedural due process requires that, when the State seeks to deprive a person of a protected interest, the "individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation."[34] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a

---

[31] 178 Wn.2d 868, 312 P.3d 30 (2013).

[32] Id. at 877; see also id. at 879-80 ("These related statutory provisions demonstrate that the legislature did not intend to involuntarily confine insanity acquittees without a judge determining that they are dangerous. We interpret RCW 10.77.190(4) consistently with this intent."); Reid, 144 Wn.2d at 627 ("While the acquittee is presumed to continue to labor under a mental defect, there is no presumption with respect to whether the acquittee continues to be dangerous at the time of acquittal." (citation omitted)).

[33] See Platt, 143 Wn.2d at 251.

[34] Amunrud, 158 Wn.2d at 216; see Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

meaningful manner."[35]  "[D]ue process is flexible and calls for such procedural

protections as the particular situation demands."[36]  To determine whether a particular

procedure satisfies due process, the court must balance three factors:

> First, the private interest that will be affected by the official action; second,
> the risk of an erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's interest, including
> the function involved and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would entail.[37]

"It is clear that 'commitment for any purpose constitutes a significant deprivation

of liberty that requires due process protection.'"[38]  Because the acquittee's "confinement

rests on his continuing illness and dangerousness,"[39] there must be "assurance that

every acquittee has prompt opportunity to obtain release if he has recovered."[40]  But this

does not mean that the acquittee must be given the opportunity at *every* stage of the

proceedings to demonstrate that he has recovered.  Rather, due process requires only

that he be given a *prompt* opportunity to obtain release.

Beaver concentrates on the absence of any statutory requirement that the trial

court make a finding that the acquittee is suffering from a current mental illness before

---

[35] Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)).

[36] Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

[37] Mathews, 424 U.S. at 335.

[38] Jones, 463 U.S. at 361 (quoting Addington v. Texas, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d (1979)).  The confinement of an individual in a psychiatric hospital involves a "'massive curtailment of liberty.'"  Vitek v. Jones, 445 U.S. 480, 491, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) (quoting Humphrey v. Cady, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972)).

[39] Jones, 463 U.S. at 369.

[40] Id. at 366.

revoking a conditional release.[41] But his narrow focus on one statutory provision

ignores the statutory scheme as a whole. Individuals detained under chapter 10.77

RCW have significant procedural rights,[42] and substitute procedural safeguards—

namely the statutory procedures for obtaining final discharge—greatly diminish any risk

of an erroneous deprivation of liberty. Specifically, the statutory scheme provides

insanity acquittees with the right to petition the Secretary of the Department of Social

and Health Services or the court directly for final discharge at any time following initial

commitment.[43] After such a petition is filed, the court must promptly hold a hearing and

---

[41] See RCW 10.77.190(4) ("The issue to be determined is whether the conditionally released person did or did not adhere to the terms and conditions of his or her release, or whether the person presents a threat to public safety.").

[42] For example, detained insanity acquittees are entitled to periodic mental examinations at least every six months. RCW 10.77.140. They may have their own experts conduct mental examinations, and indigent individuals can have independent experts appointed by the court to conduct the examinations. Id. Such experts are required by statute to be given access to all of the hospital records. Id. All of this information is compiled into a periodic report, which is given to the Secretary of the Department of Social and Health Services. Id. The individual may seek conditional release or final discharge either by applying to the Secretary or by petitioning the court directly. RCW 10.77.150(1), RCW 10.77.200(1), (5). The court may conduct a hearing and discharge the person from commitment, either conditionally or unconditionally. RCW 10.77.150(3), RCW 10.77.200(3). They are also entitled to the assistance of counsel at all stages of the proceedings. See RCW 10.77.020(1).

[43] RCW 10.77.200(1), (5); see State v. Kolocotronis, 34 Wn. App. 613, 618, 663 P.2d 1360 (1983). The statute does not include any "prohibition or time limitation against the filing of successive petitions," id. at 622, but there is some disagreement among the appellate courts regarding extra-statutory limitations on the frequent filing of successive petitions. Compare id. at 622-23 ("no subsequent petition [for final discharge] shall be considered or heard by the court *within one year of a prior determination* unless the petition is accompanied by a valid affidavit showing improvement of the petitioner's mental condition since the last trial."), with State v. Haney, 125 Wn. App. 118, 124-25, 104 P.3d 36 (2005) ("[W]e do not agree . . . that the court can impose a requirement of an affidavit of improvement if the petition is to be considered within one year of a prior determination. . . . The requirement under Kolocotronis may be reasonable, but it is not the law under the plain language of the statute."). In any event, Beaver had not filed any final discharge petition within one year prior to the January 2013 revocation hearing.

the acquittee may request a trial by jury.[44] To obtain final discharge, the insanity

acquittee has the burden of proving "by a preponderance of the evidence" that he "no

longer presents, as a result of a mental disease or defect, a substantial danger to other

persons, or a substantial likelihood of committing criminal acts jeopardizing public safety

or security, unless kept under further control by the court or other persons or

institutions."[45] These procedures for obtaining release provide an insanity acquittee

with an adequate opportunity to rebut the presumption of continuing mental illness.[46]

These alternate procedures provide "assurance that every acquittee has prompt

opportunity to obtain release if he has recovered."[47]

Furthermore, the State has an interest in preserving the integrity and efficiency of

the current statutory scheme. The "revocation/modification proceeding under

RCW 10.77.190 is designed to efficiently determine whether an insanity acquittee has

---

[44] See RCW 10.77.200(3) ("The court, upon receipt of the petition for release, shall within forty-five days order a hearing. Continuance of the hearing date shall only be allowed for good cause shown. . . . The hearing shall be before a jury if demanded by either the petitioner or the prosecuting attorney."); Haney, 125 Wn. App. at 123-24 (holding that the procedural requirements apply whether the petition is filed with the Secretary or with the court directly); Kolocotronis, 34 Wn. App. at 620-21 (same).

[45] RCW 10.77.200(3); see also RCW 10.77.200(5).

[46] See Matter of Lewis, 403 A.2d 1115, 1119 (Del. 1979). Notably, this statutory scheme, providing for consideration of the acquittee's mental health condition upon a petition for release rather than at a revocation hearing, makes sense because "if [an] individual proves he or she is no longer mentally ill, such individual would be entitled to a *final discharge*." Platt, 143 Wn.2d at 252 (emphasis added). It would not be enough to simply deny the State's petition for revocation of conditional release. See Reid, 144 Wn.2d at 631 (holding that the trial court's "factual determination [that the insanity acquittee no longer suffered from a mental disease or defect] vitiates the basis to confine Mr. Reid to a psychiatric facility pursuant to RCW 10.77.110. His continued detention, even if it is merely conditional, is therefore contrary to the plain language of the commitment statute which requires discharge after cure.").

[47] Jones, 463 U.S. at 366.

11

violated the conditions of her release and presents a danger to herself or others."[48]

Beaver's proposal would effectively turn every revocation hearing into a de novo commitment hearing. Instead of focusing on the critical question of whether the acquittee violated release conditions or presents a public safety threat, the court would need to additionally consider whether the acquittee has recovered his sanity.[49] Such an expanded hearing would likely consume valuable resources of time and effort on a proceeding that would do little more than replicate separate release proceedings available to acquittees. In addition, blurring the distinction between the various types of hearings risks shifting the primary responsibility for establishing the condition of the acquittee's mental health from the acquittee to the State.[50] "Maintaining the trial court's discretion to efficiently address and modify conditions of an acquittee's release is a significant governmental interest."[51]

Balancing these factors, we conclude that an insanity acquittee's procedural due process rights are not violated when a conditional release is revoked without a renewed finding that the acquittee suffers from a mental illness. Although the acquittee's interest in liberty is substantial, so too is the State's interest in avoiding unnecessarily costly and confusing revocation hearings. Most importantly, the risk of erroneous commitment is minimal because existing procedures provide acquittees with the opportunity to be

---

[48] State v. Derenoff, ___ Wn. App. ___, 332 P.3d 1001, 1006 (2014).

[49] See Jones, 463 U.S. at 366.

[50] See United States v. Jain, 174 F.3d 892, 897 (7th Cir. 1999). The State is given the burden of demonstrating that the conditionally released acquittee violated release conditions. See RCW 10.77.190. In contrast, the burden of demonstrating that the acquittee has regained his sanity rests with the acquittee. Klein, 156 Wn.2d at 114; Platt, 143 Wn.2d at 251 n.4; see also Jones, 463 U.S. at 370.

[51] Derenoff, 332 P.3d at 1006.

heard at a meaningful time and in a meaningful manner separate from conditional release revocation hearings.[52] Beaver's procedural due process rights were not violated.

We further note that Beaver would not prevail even if we accepted his premise that the trial court must find that the insanity acquittee suffers from a current mental illness in order to revoke conditional release. Because the acquittee has the burden to prove that he has regained his sanity,[53] Beaver bears the consequences of failing to obtain such a finding. Here, the trial court did not make any findings regarding Beaver's mental health. "'In the absence of a finding on a factual issue we must indulge the presumption that the party with the burden of proof failed to sustain their burden on this issue.'"[54] Thus, in the absence of a finding that Beaver has recovered his sanity, we presume that he remains mentally ill.

---

[52] See Mathews, 424 U.S. at 335; McCuistion, 174 Wn.2d at 395.

[53] The acquittee bears this burden for purposes of final release, RCW 10.77.200(3), and Beaver provides no compelling authority that the burden of proof should be different at a revocation hearing. Practical considerations support this allocation of the burden of proof: "If the State had the burden of proof, an insanity acquittee could refuse to participate in testing, prevent the State from obtaining critical information about his mental health, and then seek release because the State cannot prove that he is mentally ill." State v. Platt, 97 Wn. App. 494, 505, 984 P.2d 441 (1999), aff'd, 143 Wn.2d 242, 19 P.3d 412 (2001); see also Hickey v. Morris, 722 F.2d 543, 548 (9th Cir. 1983) ("[B]ecause the defendant himself first raised and proved his insanity, fairness suggests that release should require his own showing of recovery rather than the state's showing of continued insanity."). Furthermore, consistent with our Supreme Court's observation when considering the burden of proof for conditional release, "[i]t would be anomalous for chapter 10.77 RCW to place the burden of proving insanity on the defendant and the grounds for final discharge on that individual, but then place the burden on the State with respect to [revoking] the individual's conditional release." Platt, 143 Wn.2d at 251.

[54] In re Welfare of A.B., 168 Wn.2d 908, 927 n.42, 232 P.3d 1104 (2010) (quoting State v. Armenta, 134 Wn.2d 1, 14, 948 P.2d 1280 (1997)); see also Ellerman v. Centerpoint Prepress, Inc., 143 Wn.2d 514, 524, 22 P.3d 795 (2001) ("That being the case, the absence of a finding of fact is to be interpreted as a finding against him.").

We need not consider any of the vague claims that Beaver raises in passing in his statement of additional grounds for review.[55]

We affirm.

WE CONCUR:

---

[55] See RAP 10.10(c) ("[T]he appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors.").