# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| MICHAEL WEISMAN,<br><br>     Respondent,<br><br>  v.<br><br>WASHINGTON STATE DEPARTMENT OF EMPLOYMENT SECURITY; and CAMI FEEK, Commissioner of the Washington State Department of Employment Security, in her official capacity,<br><br>     Appellants. | No. 83893-8-I<br><br>ORDER DENYING MOTION TO PUBLISH, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |

The appellants, Washington State Department of Employment Security, and non-party, Igor Lukashin, both filed a motion to publish the opinion dated April 10, 2023. Respondent Michael Weisman has responded. Following consideration of the motions, the panel has determined the motions should be denied.

Now, therefore it is hereby

ORDERED that the motion to publish is denied; and it is further

ORDERED that the opinion filed on April 10, 2023 is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

_Coburn, J._

_Díaz, J._

_Smith, C.J._

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MICHAEL WEISMAN,

                Respondent,

      v.

WASHINGTON STATE DEPARTMENT
OF EMPLOYMENT SECURITY; and
CAMI FEEK, Commissioner of the
Washington State Department of
Employment Security, in her official
capacity,

                Appellants.

No. 83893-8-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — The Washington State Department of Employment Security (ESD) determined that Michael Weisman, a state employee, underreported the hours he worked for two weeks resulting in an overpayment of unemployment insurance benefits (UB) for which he was eligible to cover his furloughed time. ESD notified Weisman that he was overpaid, that he was liable for the overpayment and, unless he paid the debt, his tax refund could be intercepted to offset his debt. Weisman did not timely appeal the overpayment determinations, but also did not pay his debt. After ESD sent Weisman a notice of intent to intercept his tax refund, Weisman eventually filed a complaint in superior court. The court granted Weisman's motion for partial summary judgment determining that his procedural due process rights were violated because ESD did not follow federal offset law before intercepting his tax refund. ESD contends

Citations and pin cites are based on the Westlaw online version of the cited material.

that it did in fact follow federal offset law and provided Weisman proper notice and meaningful opportunity to be heard prior to intercepting his tax refund. We agree with ESD. Accordingly, we reverse and remand.

FACTS

The following facts are not in dispute. Michael Weisman was a staff attorney for the Washington State Department of Health (DOH), and he usually worked 40 hours a week. In June 2020, following the inception of the COVID-19 pandemic, Weisman applied for unemployment insurance benefits (UB) through an approved SharedWork plan between the ESD and DOH. SharedWork benefits are unemployment benefits intended for employees whose hours have been reduced by 10 to 50 percent. RCW 50.60.030(3). DOH required SharedWork claimants to apply for unemployment benefits each week. A SharedWork claimant is paid partial UB based on the percentage of lost work from a given work week multiplied by the individual's weekly benefit amount.

During the 7 weeks Weisman participated in the program, his employer reduced his usual 40 hours a week by 20 percent, and he worked 32 hours a week. Based on his earnings, his regular weekly benefit amount was $790 in UB. Based on that amount, he was entitled to 20 percent of that amount, or $158 in UB weekly.[1]

For the week ending July 4, Weisman reported receiving 8 hours of holiday pay and did not work any regular hours, when, in fact, he had worked 32 hours that week. Based on his report of only receiving 8 hours of holiday pay, ESD paid Weisman $790, his regular weekly UB amount instead of $158, resulting in a $632 overpayment. The

___

[1] Weisman also was eligible to receive up to $600 each week in benefits through the Federal Pandemic Unemployment Compensation (FPUC) program until the end of July 2020. ESD never requested a return of any FPUC dollars, which are not at issue in this appeal.

next 2 weeks, Weisman reported working 32 hours each week and was paid the $158 in UB each of those weeks.

During the week ending July 25, Weisman reported that he received 8 hours of sick pay and did not work for his employer that week, when in fact he had worked 32 hours that week. The report of only receiving 8 hours of sick pay resulted in a calculation of Weisman being entitled to the $790 regular weekly UB. But according to ESD, it paid Weisman $519[2] in UB, resulting in a $361 overpayment for that week because he should only have received the $158. In total, ESD overpaid Weisman $993 for both weeks.

In the end of July 2020, ESD sent Weisman a fact-finding letter notifying him that ESD had received information that he may have worked and received pay for at least one day between July 19 and July 25 from DOH. The letter asked him to answer several questions so that ESD can decide whether it can pay or continue to pay him UB. The letter notified Weisman that ESD may have already paid him in unemployment benefits and that if ESD had paid him too much and it was his fault, he would have to pay it back. The letter warned Weisman that if he did not pay back the overpayment, ESD could take money from his federal income-tax refund. The letter also informed Weisman "[i]f you had an overpayment and it was not your fault, you can request a waiver. If we approve your request, you won't have to pay us back." Nothing in the record indicates that Weisman requested a waiver.

---

[2] There is no explanation in the record why ESD paid $519 instead of the calculated $790 for week ending July 25 based on his report of getting paid only 8 hours of sick leave. Regardless, based on Weisman working 32 hours, he was only entitled to the $158 UB.

On August 5, Weisman signed an ESD weekly correction form where he agreed with DOH's reporting that he worked 32 hours for the week ending July 4. Weisman checked the box indicating, "I agree with the information my employer reported. I understand if I was overpaid I am liable for repayment."

Two days later, Weisman signed and submitted the fact-finding letter regarding week ending July 25. In the letter Weisman agreed that he had worked 32 hours and was furloughed for the other 8 hours that week.

On September 24, an ESD representative interviewed Weisman by telephone regarding his claims for week ending July 4 and July 25. Weisman explained that he was confused about the system and misunderstood the website. He confirmed that he had been paid to work 32 hours each of the weeks.

ESD then sent Weisman several overpayment determination letters. The first letter dated September 24 notified Weisman that he owed $519 to ESD because it had overpaid him $519 for the week ending July 25 when he was entitled to $0 UB. The next letter dated September 25 notified Weisman that he owed ESD $632 for the week ending July 4 because it had paid him $790 UB when he was entitled to $158. The third letter dated October 22 replaced the earlier letter about week ending July 25. It notified Weisman that he owed ESD $361 because it had paid him $519 in UB when he was actually entitled to $158.

Besides the difference in the amounts owed, paid, and the relevant weeks in question, the substance of the letters were the same. The letters explained how Weisman could make payment if he agreed with the decision and how he could appeal if he disagreed. It gave him a specific 30-day deadline to appeal and warned him that if

4

he failed to make payments on time ESD could garnish his wages or bank accounts, or withhold his income tax refund.

Because Weisman did not pay the debts or timely appeal, ESD sent Weisman a "Notice of Intent to Intercept Federal (IRS) Income Tax Refund" (intercept notice) on November 28. The notice informed Weisman that in order to avoid the offset of his tax refund to repay ESD, he had 60 days to: (1) pay the overpayment balance; (2) arrange an acceptable written payment plan; or (3) send evidence to support why he believed all or part of the debt was "not past due or legally enforceable under the Treasury Offset Program because it is not based on fraud or on your failure to report earnings."[3] The intercept notice directed that the supporting evidence must be sent to the provided address or email for Employment Security Collections (Collections). The notice also told Weisman to call or email collections if he had any questions.

On January 15, 2021, Weisman sent Collections an email addressing his concerns and asking ESD to cancel his overpayment determinations. He wrote,

> I am writing to find out what is going on with my claim, and why I received an overpayment letter.
>
> I am a state employee and was directed to file [UB] claims when we were furloughed 1 day each week in June and July, and again in late August/September under the Shared Work program. We were to receive full compensation for our lost wages plus $600/wk. So I did as we were directed. By my calculations I was underpaid, but whatever, it was something.
>
> Then I received a letter telling me I was overpaid. There was no explanation in the letter. There is no explanation how it was calculated in the letter or on the ESD web site. Or at least, I was unable to find any

---

[3] The intercept notice also informed Weisman that he could file IRS Form 8379, Injured Spouse Claim and Allocation, with his tax return. It further notified him that if he filed for bankruptcy, he would not be subject to offset while an automatic stay is in effect. ESD asked to be notified of such a stay by sending evidence concerning the bankruptcy.

explanation. It was difficult for me to find out what I was paid, or not paid, or why. There are simply no answers.

One day, out of the blue, I received a call from an adjudicator. This person was speaking very fast and seemed to be quite excited and upset. She kept accusing me of fraud. She was unable to explain what I had done wrong, and I of course denied the allegations. I never committed any fraud. I'll admit, however, the ESD web-based program is not suited to the Shared Work claims and its possible I may have checked a wrong box, but I honestly just don't know. I was never offered any explanation, it does not appear on the web site, and it is not in any of the letters I received.

I have heard on the news recently that ESD has the discretion to cancel repayments where there is no evidence of fraud. I am requesting cancellation of my overpayment determination. I am unable to appeal because ESD never provided me with any determination that I could appeal, because there was no calculation or explanation. I have not committed any fraud or any intentional misrepresentation.

That same day, Collections generated an automatic reply email explaining that COVID-19 pandemic has caused high workloads and slowed response times to about 15-20 business days.  The email also stated,

You do not owe us any money as a result of a fraudulent claim
You might have received a letter from us saying that you must repay benefits (called an overpayment) that we paid on the fraudulent claim in your name. You can ignore that letter! Our computer system automatically generates the letter when we deny an unemployment application. We're sorry for the anxiety it may have caused. We understand that these letters can be scary.

You might still owe money for an overpayment on a legitimate claim you filed with us in the past or the future. Please respond to any requests for information we might send you about it.

Collections responded to Weisman on January 21 and provided him copies of the original determination letters that explained his overpayment and to call the claim center if he needed further explanation.  The email also stated that, "[i]f you disagree with the overpayment you must file an appeal."  It provided instructions on how to appeal through the ESD website.  The email further alerted Weisman that his balance "is now

6

active in collections. Even if you are going to file an appeal you must make payment every 30 days to avoid garnishment. Also you are responsible for any penalty or interest that accrues. . .”

By January 27, 60 days after ESD issued the intercept notice, Weisman had not resolved his account to prevent the offset.

On January 28, Weisman responded to ESD's email, stating,

The determination letters you sent state that I did not enter my gross earnings on 2 different weeks. I did enter my gross earnings on each of those weeks. I remember doing this, of course. But further evidence is that I received [unemployment insurance] payments for those weeks.

ESD replied the same day referencing its previous email and reaffirming that if he disagreed with the overpayment and he is not able to file an appeal via eServices, he could write a letter and mail or fax it to the Appeal Unit.

On January 29, because the debt satisfied the criteria for the Federal Treasury Offset Program, ESD's computer system automatically referred Weisman's debt to financial management services, which administers the Treasury Offset Program. That same day, Weisman filed an appeal of the October 22, 2020 ESD determination letter. In his explanation of why he disagreed with the determination, he wrote,

I received determination letters that made no sense, they were inaccurate, and they were wrong. I DID provide the ESD with all the information required for my claim, for both of the weeks mentioned in the letters. I am a state employee in the SharedWork program. I filled out timesheets from my employer, Department of Health each week. That information was supposed to be shared with ESD. The letters I received kept changing the determination, and I waited for ESD to catch the error and fix the problem. But that never happened.

. . . .

I heard on the news that ESD was not going to seek collection of overpayments that were no fault of the claimant. But I did not find any way

7

> to contact ESD about this. I wrote, I called but the phone lines are now closed.
>
> I would like the collections on my claim cancelled and my claim determined to be correct. If ESD needs new information from me, I would like clear communication of what ESD needs and how I can provide it. Just let me know what you need.

In May 2021, Weisman's tax return was intercepted to pay the balance of his debt to ESD.

An administrative hearing was held on August 11. According to the Administrative Law Judge's (ALJ) findings, Weisman maintained he was not appealing the October 22 determination letter and denied filing the appeal dated January 29. The ALJ noted that under RCW 50.32.075, the 30-day deadline for an appeal may be waived if good cause for the late-filed appeal is shown, but concluded that because Weisman did not believe he had even filed a request for an appeal on January 29 there was no basis or ability to determine whether or not there was good cause to hear the appeal. The ALJ dismissed the appeal as untimely.[4] Weisman appealed to an ESD commissioner, who observed that Weisman sought recourse from the intercept letter and requested a default order be issued against ESD and wanted a hearing regarding damages. The commissioner observed,

> Given the claimant's contention that "money" has been wrongfully withheld from him, it is somewhat puzzling that, when provided the opportunity, he chose not to proceed with appeal of the October 22, 2020, Determination of overpayment. (Regarding timeliness: The claimant's testimony that he did not receive the Determination would generally provide good cause for a late filed appeal.)

The commissioner affirmed the dismissal by the ALJ. Weisman petitioned for judicial review of that decision under the Administrative Procedures Act. About two weeks later

---

[4] The transcript for the administrative hearing is not contained in the record. Though Weisman petitioned judicial review of the commissioners ruling, that ruling is not part of this appeal.

he also brought suit against ESD in King County Superior Court under 42 U.S.C. § 1983, alleging that ESD intercepted his federal tax refund in violation of 26 U.S.C. § 6402(f)(3), 31 C.F.R. § 285.8(c)(3), and his due process rights under the Fourteenth Amendment to the U.S. Constitution were violated. He sought an injunction and declaratory relief requiring ESD to return his tax refund, enjoining ESD from intercepting his future tax refunds, and requiring ESD to adopt, amend, or rescind rules necessary to ensure compliance with federal law and due process. The court denied Weisman's motion to consolidate his petition and complaint, but linked the cases and assigned them to the same superior court judge.

Weisman moved for partial summary judgment of its complaint, arguing that ESD did not have established procedures to consider challenges to intercepts and did not allow him 60 days to present evidence before the intercept occurred. Weisman also argued that ESD violated due process by not considering evidence he submitted before the intercept took place. ESD rebutted these arguments and asked the court in ESD's response motion to grant summary judgment in its favor and dismiss the complaint in its entirety. The court granted Weisman's partial summary judgment motion finding that ESD's intercept of Weisman's tax refund violated 26 U.S.C. § 6402(f)(3), 31 C.F.R. 285.8(c)(3), and the due process clause of the Fourteenth Amendment. The court did not enter any written findings of fact, but explained orally that Weisman "very clearly" said in his January 15 email to Collections that he did not commit fraud or failed to report, the two bases for the intercept process. The court also found that the intercept notice was deficient for not describing the type of evidence that would satisfy its internal

9

regulations. The court also found that ESD failed to provide Weisman meaningful review by not considering his January 15 email as evidence.

The court ordered ESD to return $1,043.66 of Weisman's tax refund. A commissioner of this court granted ESD's motion for discretionary review.

## DISCUSSION

This court reviews summary judgment orders de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Keck, 184 Wn.2d at 370-71.

For the first time on appeal, Weisman argues that ESD can only intercept a tax refund when the failure to report earnings is *intentional* or involves misconduct.[5] Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). Nevertheless, even if we were to consider this argument, the plain language of the statute contradicts Weisman's argument.

Federal law allows states to use the treasury department intercept process to satisfy a "covered unemployment compensation debt." 26 U.S.C. § 6402(f)(4). A covered unemployment compensation debt is a "past-due debt for erroneous payment of unemployment compensation due to *fraud or the person's failure to report earnings*

---

[5] At oral argument Weisman maintained that he did raise this argument below. Wash. Court of Appeals oral argument, Weisman v. Dep't of Emp. Sec., No. 83893-8-I (March 7, 2023), *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023031229/?eventID=2023031229. A review of the record contradicts this claim. While Weisman may have argued below that he did not intentionally fail to report earnings, that is distinct from arguing that the offset laws requires the failure to report earnings to be intentional or involve misconduct.

which has become final under the law of a State . . . and which remains uncollected." 26 U.S.C. § 6402(f)(4)(A) (emphasis added).  In cases of statutory interpretation, this court looks first to the plain language of the statute to discern the legislature's intent. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). The plain language of the statute provides that covered unemployment debt includes past-due debts due to the misconduct of fraud or when someone simply fails to report earnings. There is no requirement that the debtor engaged in misconduct when failing to report earnings or intentionally did so.[6]

We now consider whether ESD violated 26 U.S.C. § 6402(f)(3) and 31 C.F.R. 285.8(c)(3).  31 C.F.R. § 285.8(c)(3) provides the following:

> (i) Advance notification to the debtor of the State's intent to collect by Federal tax refund offset. The State is required to provide a written notification to the debtor informing the debtor that the State intends to refer the debt for collection by tax refund offset. The notice must give the debtor at least 60 days to present evidence, in accordance with procedures established by the State, that all or part of the debt is not past due or not legally enforceable, or, in the case of a covered unemployment compensation debt, the debt is not due to fraud or the debtor's failure to report earnings…
>
> . . .
>
> (ii) Determination. The State must, in accordance with procedures

---

[6] A Department of Labor's (DOL) March 8, 2011 advisory letter to state workforce agencies explained that the treasury offset program "may now be used to collect erroneous payments that are either due to fraud or to the persons' failure to report earnings, even if the state does not find that such failure constituted fraud."  U.S. Dep't of Lab., Emp't & Training Admin. Advisory Sys., Unemployment Insurance Program Letter No. 11-11, at 2 (Mar. 8, 2011), https://wdr.doleta.gov/directives/attach/UIPL/UIPL11-11.pdf.  Again in DOL's 2018 advisory to state workforce agencies, DOL stated that workforce agencies must use the treasury offset program "to collect erroneous payments made to [unemployment compensation] claimants that are due to fraud or to the person's failure to report earnings.  This is true *even if the state does not find that the failure to report earnings constituted fraud.*"  U.S. Dep't of Lab., Emp't & Training Admin. Advisory Sys., Unemployment Insurance Program Letter No. 02-19, at 2 (Dec. 12, 2018) https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2018/UIPL_2-19_Acc.pdf.

established by the State, consider any evidence presented by a debtor in response to the notice described in paragraph (c)(3)(i) of this section and determine whether an amount of such debt is past due and legally enforceable and, in the case of a covered unemployment compensation debt, the debt is due to fraud or the debtor's failure to report earnings….

Under 26 U.S.C. § 6402(f)(3), a State may not seize a federal tax refund until it provides the debtor "at least 60 days to present evidence that all or part of such liability is not legally enforceable or is not a covered unemployment compensation debt" and "considers any evidence presented by such person. . ." ESD fulfilled the notice requirements and correctly referred the debt to the treasury offset program. ESD sent Weisman the intercept notice on November 28, 2020, and did not submit Weisman's debt to the offset program until January 29, 2021, which was 62 days later. The notice expressly notified Weisman of the limited ways he could avoid offset by acting within 60 days from the date of the notice, including the following:

If you believe all or a part of the debt is not past due or legally enforceable under the Treasury Offset Program because it is not based on fraud or on your failure to report earnings, you must send evidence to support your position to the address or email below. We will inform you of our decision about your debt.

Weisman asserts that ESD's notice of intercept was deficient because it did not describe what type of evidence it would accept. Weisman cites to ESD's internal manual to support his claim that ESD will only consider documentation of full payment. However, in describing what the claimant can do to challenge the tax intercept, the manual states a claimant can:

3. Prove the debt is:

a. not past due; or
b. legally enforceable because it is not based on fraud; or
c. their failure to report earnings.

12

> Proof must be documentation such as an ESC billing that reflects the [debts] are paid in full. This is not an "appeal" such as a claimant would file during the appeal period. This is merely a review of their proof for these specific situations listed. ESC will inform the client of our decision about their debt.

The manual provides that presenting documentation that reflects the debt is paid in full is one way to show a debt is not past due. It does not suggest that the only acceptable evidence to challenge whether a debt is based on a failure to report earnings is proof of full payment of the debt. The fact that the intercept notice did not define what type of "evidence" is acceptable, is to Weisman's benefit, not detriment. This allowed him to submit what he believed to be evidence for consideration by ESD.

The offset program allows states to establish its own procedures on how a debtor may present evidence. 31 C.F.R. § 285.8(c)(3) ("The notice must give the debtor at least 60 days to present evidence, in accordance with procedures established by the State"). ESD's intercept notice warned Weisman that ESD intended to collect through a federal tax-refund offset. It further explained that Weisman could avoid offset if, within 60 days, he: (1) paid the balance, (2) set up a payment plan, or (3) sent evidence to Collection's address or email that supported his belief that the debt was not past due or legally enforceable because it is not based on fraud or on failure to report earnings. The notice was not deficient.

Next, Weisman argued below and the trial court found that the January 15 email "clearly" asserted that the debt was not based on fraud or a failure to report earnings. Weisman contends that by failing to consider the January 15 email, ESD violated both 26 U.S.C. § 6402(f)(3) and 31 C.F.R. 285.8(c)(3) by refusing to consider "any" evidence. Weisman argues, and the trial court agreed, that his assertion alone should be sufficient

13

for consideration without having to submit additional documentation. ESD argues that a general denial without more is not evidence.

However, we need not resolve whether a general assertion is sufficient to trigger ESD's consideration and evaluation of whether the debt was legally enforceable through the offset program. This is because, contrary to the trial court's oral findings, Weisman did not clearly assert in his January 15 email that the debt was not based on failure to report earnings.

Instead, he stated that he did not commit fraud or any "intentional misrepresentation," but admitted that the ESD web-based program was not suited to the SharedWork claims and it was possible he may have checked a wrong box. It is evident from the January 15 email that Weisman indicated the overpayment may have resulted by mistakenly underreporting his earnings because of a confusing reporting system. But questioning why he may have underreported his earnings is not equivalent to submitting evidence that the debt was not based on his failure to report earnings. Thus, we agree with ESD that it did not consider any evidence because there was no evidence to consider. Weisman did not send evidence that he paid the debt, did not arrange for payment of the debt, and, though he denied that the debt was based on fraud, he did not claim that the debt was not based on failure to report earnings.

Even if it could be argued that the January 15 email suggested that Weisman claimed the debt was not based on his failure to report earnings, the record established that Collections did consider the email. This consideration is evident by ESD resending Weisman the overpayment determination letters in response to his January 15 email. The overpayment determination letters explicitly told Weisman that the reason for the

14

ESD action was because "[y]ou didn't report your gross earnings when you submitted your weekly claim." The letters also explicitly laid out the benefits that ESD paid him, the amount to which he was entitled, and the amount he was overpaid. This suggests that Collections did consider the email, researched its own records, and confirmed the debt was based on Weisman's failure to report earnings. We observe that at the time Weisman sent his January 15 email, he was already aware that ESD investigated why Weisman only initially reported 8 hours of holiday pay the week ending July 4, and 8 hours of sick pay the week ending July 25, and that Weisman confirmed with ESD that he had been paid to work 32 hours each of those weeks.

Moreover, Weisman's email was not evidence that his debt was not legally enforceable. It was merely a request to cancel his debt because he had "heard" ESD was doing that for others.

We therefore conclude ESD did not violate 26 U.S.C. § 6402(f)(3) or 31 C.F.R. 285.8(c)(3).

Weisman also asserts that his due process was violated when Collections staff misdirected him to a forum without jurisdiction to consider an appeal of the intercept notice. We disagree.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation of a protected interest. State v. Beaver, 184 Wn. App. 235, 246, 336 P.3d 654 (2014). The notice must be "'reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections.'" State v Nelson, 158 Wn.2d 699, 703, 147 P.3d 553 (2006) (internal quotation marks omitted) (quoting Jones v. Flowers, 547 U.S. 220, 226, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006)).

The question is whether ESD provided Weisman proper notice and an opportunity to be heard prior to intercepting his tax refund. Weisman's focus only on the intercept notice ignores the fact that by the time the debt was eligible for the intercept program it was already a final debt under the law. He cannot assert a due process violation and have us ignore the other notices he received and opportunities he was given prior to the debt becoming final.

Congress recognized that the determination as to whether a covered unemployment compensation debt is final is under state law, not the federal offset statute, which defines "covered unemployment compensation debt" as

> a past-due debt for erroneous payment of unemployment compensation due to fraud or the person's failure to report earnings which has become *final under the law of a State* certified by the Secretary of Labor pursuant to section 3304 and which remains uncollected.

26 U.S.C. § 6402(f)(4)(A) (emphasis added). Weisman's debt was a covered unemployment debt because it was a debt that became final under Washington law. The Employment Security Act, chapter 50.32 RCW, and the Administrative Procedure Act (APA), chapter 34.05 RCW, provide the procedure to contest an unemployment benefits determination. If a claimant fails to appeal a benefits determination within 30 days, it is "conclusively deemed to be correct" and therefore final under Washington law. RCW 50.32.020.

16

When claimants timely appeal an overpayment, they can have a hearing on both the amount of the overpayment and the reason for overpayment. WAC 192-220-060(1)(a), (b). If a claimant files an appeal after the 30-day deadline, an appeal tribunal can waive limitations for good cause shown. RCW 50.32.075.

Before ESD intercepted Weisman's property, ESD investigated whether he did not report his earnings. ESD sent Weisman a claims correction form and fact-finding form when ESD first learned of a discrepancy between the earnings Weisman initially reported and what his employer reported. In the fact-finding form, Weisman was told that if an overpayment was not his fault he could request a waiver, and if the waiver was approved, Weisman would not have to pay ESD back. ESD interviewed Weisman over the telephone about the discrepancies and gave him another opportunity to explain. ESD confirmed with Weisman that he did not correctly report his earnings. ESD sent overpayment determination letters explaining the calculation of the overpayment and how to appeal if he disagreed. These letters specified that if he did not pay ESD back, his income tax refund could be withheld. ESD then sent the intercept notice informing him the limited ways he could avoid the offset, including submitting evidence within 60 days to be considered by Collections. When Weisman emailed Collections asserting that he was confused and wanted ESD to cancel his debt, ESD again provided the overpayment determination letters telling him how to appeal them. Weisman did file an appeal and was given an administrative hearing. At the hearing, he asserted that he did not want to challenge the overpayment determination letters even though he had the opportunity to show good cause for filing the appeal late. Collections did not misdirect Weisman in the appeal process.

17

In light of the above, ESD provided Weisman with proper notice and a meaningful opportunity to be heard before intercepting his tax refund.

Attorney Fees

Weisman requests attorney fees under 42 U.S.C. § 1983, which allows for reasonable attorney fees for certain constitutional claims if he prevails. Because we reverse, we deny his request.[7]

CONCLUSION

Because ESD followed federal offset law and did not violate Weisman's procedural due process rights, we reverse the trial court's order on Weisman's motion for partial summary judgment and remand for further proceedings consistent with this opinion.[8]

_____
Coburn, J.

WE CONCUR:

_____
Díaz, J.

_____
Smith, C.J.

_____

[7] The parties dispute whether a showing of prejudice is required to award damages. Weisman correctly argues that nominal damages are available when there is a procedural due process violation even if compensatory damages are unavailable. See Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978); Frudden v. Pilling, 877 F.3d 821, 830 (9th Cir 2017). Because we hold that ESD did not deny Weisman due process, we need not address prejudice.

[8] ESD asks that we consider its request to grant summary judgment in its favor and dismiss the case in its entirety, a request it also made below. However, the issue before us was the granting of a partial summary judgment and Weisman contends there are issues raised in the complaint that were not part of this motion. ESD does not dispute this characterization of Weisman's claims. Thus, we decline ESD's invitation to dismiss the case in its entirety.